IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY,

       Plaintiff,

v.                                 Civil Action No. 5:19-cv-185

CASTLE LAW GROUP, PC,
A Tennessee Corporation;
JUDSON PHILLIPS, ESQ.,
an individual;
CASTLE VENTURE GROUP, LLC,
A Tennessee limited liability company;
CASTLE EQUITY GROUP, INC.,
A Tennessee corporation;
CASTLE PARTNERS INC.,
A Tennessee corporation;
CASTLE MARKETING GROUP, LLC,
A Tennessee limited liability company;
TRISTAR CONSUMER GROUP,
A Tennessee Corporation;
MUSIC CITY VENTURES, INC.,
A Tennessee Corporation;

TRISTAR CONSUMER LAW,
A Tennessee Corporation;
TRISTAR CONSUMER LAW ORGANIZATION;
A Tennessee Corporation;
AMERICAN CONSUMER RIGHTS ORGANIZATION;
A Tennessee Corporation;
ADVOCUS LEGAL, INC.;
A Tennessee Corporation;
TRISTAR CONSUMER LAW FOUNDATION,
A Tennessee Corporation;
CAPITAL COMPLIANCE GROUP, CO.,
A Tennessee Corporation;
CAPITAL COMPLIANCE GROUP, INC.,
A Tennessee Corporation;
CAPITAL RECOVERY LAW, PC.,
A Tennessee Corporation;
ADVOCUS LEGAL ORGANIZATION,
A Tennessee Corporation;
US CONSUMER ADVOCATES,

A Tennessee Corporation;
**THACKER AND ASSOCIATES INTERNATIONAL,**
**LLC, a foreign limited liability company;**

**BRUYETTE AND ASSOCIATES, LLC,**
A Florida Corporation;

**SEAN AUSTIN, an individual;**
**WILLIAM MICHAEL KEEVER, an individual;**
**ASHLEY R. KEEVER, an individual;**
**STEVE HUFFMAN, an individual;**
**JOHN PRESTON THOMPSON, an individual;**

**And JOHN DOES 1-10, corporate entities and**
**individuals presently unknown,**

      **Defendants.**

## SECOND AMENDED COMPLAINT

### PARTIES

1.     Plaintiff Diana Mey is a resident and citizen of Ohio County, West Virginia.

2.     Defendant Castle Law Group, P.C. is a Tennessee corporation that transacted business in the State of West Virginia at times relevant herein. This company was administratively dissolved on August 6, 2019, but was operational when the majority of calls to Ms. Mey were placed.

3.     Defendant Judson Phillips, Esq. is a resident and citizen of Tennessee.

4.     Defendant Castle Venture Group, LLC is a Tennessee limited liability company that transacted business in the State of West Virginia at times relevant herein. This company was administratively dissolved on August 8, 2018, but was operational when the majority of calls to Ms. Mey were placed.

5.     According to Tennessee Secretary of State records, Castle Venture Group, LLC was succeeded by Castle Equity Group, Inc.  Castle Equity Group, Inc. changed its name to

2

Castle Partners Inc. on July 7, 2015. Castle Partners Inc. was administratively dissolved on August 8, 2018, but was operational when the majority of calls to Ms. Mey were placed.

6.     Discovery produced in this case reveals that Defendant Castle Marketing Group, LLC is a Tennessee limited liability company and successor to Defendant Castle Venture Group, LLC.  Defendant Castle Marketing Group, LLC transacted business in the State of West Virginia at times relevant herein by, among other things, conducting marketing for Castle Law Group, P.C.

7.     Defendant Tristar Consumer Group is an active Tennessee corporation that transacted business in the State of West Virginia at times relevant herein. Its name has been assumed by Music City Ventures, Inc. Upon information and belief, Music City Ventures is either a successor entity or an entity through which Tristar Consumer Group does business.

8.     Defendant Music City Ventures, Inc. is an active Tennessee corporation that transacted business in the State of West Virginia at times relevant herein, either in its own right or through its predecessor, Tristar Consumer Group.

9.     Tristar Consumer Law is an inactive Tennessee corporation that transacted business in the State of West Virginia as an assumed name of Defendant Castle Law Group, P.C. On or about July 25, 2017, Tristar Consumer Law became an assumed name of Castle Law Group, P.C. Upon information and belief, Tristar Consumer Law is either a successor entity to Castle Law Group, P.C. or is a name under which Castle Law Group, P.C. continues operations.

10.     Tristar Consumer Law Organization is a Tennessee corporation that transacted business in the State of West Virginia at times relevant herein. This organization was the predecessor to or an assumed name of American Consumer Rights Organization.

11.     American Consumer Rights Organization is an active Tennessee corporation believed to be the successor in interest to or an assumed name of Tristar Consumer Law Organization that transacted business in the State of West Virginia at times relevant herein.

12.     Advocus Legal, Inc. is a Tennessee corporation which Mr. Phillips incorporated. Although this organization was administratively dissolved on August 6, 2019, upon information and belief, Mr. Phillips and/or other Defendants transacted business in the State of West Virginia through Advocus Legal, Inc. at times relevant herein.

13.     Tristar Consumer Law Foundation is a Tennessee corporation which Mr. Phillips incorporated.  This organization administratively dissolved on August 6, 2019, but upon information and belief, Mr. Phillips and/or other Defendants transacted business in the State of West Virginia through it at times relevant herein.

14.     Capital Compliance Group, CO is a Tennessee corporation which Mr. Phillips incorporated and fully owns.  Upon information and belief, Mr. Phillips transacted business in the State of West Virginia by and through this company and/or its predecessors, Capital Compliance Group, Inc. and/or Capital Recovery Law, P.C. at times relevant herein.

15.     Capital Compliance Group, Inc. was a Tennessee corporation. This company was administratively dissolved on August 8, 2018 but was operational when the majority of calls to Plaintiff Mey were placed. Upon information and belief, Capital Compliance Group, Inc. was the predecessor to Capital Compliance Group, CO which is presently owned by Mr. Phillips. Upon information and belief, Capital Compliance Group, Inc. transacted business in the State of West Virginia at times relevant herein.

16.     Capital Recovery Law, PC was a Tennessee corporation active until April 20, 2018, at which time its name changed to Capital Compliance Group, Inc.  Upon information and

belief, it was a predecessor to both Capital Compliance, Inc. and Capital Compliance Group, CO. Upon information and belief, Capital Recovery Law, PC transacted business in the State of West Virginia at times relevant herein.

17.     Advocus Legal Organization is a Tennessee corporation which was incorporated by Mr. Phillips.  This company was administratively dissolved on August 6, 2019 but was operational when the Defendants placed the majority of calls to Plaintiff Mey.  Upon information and belief, this entity, by and through other Defendants, transacted business in the State of West Virginia at times relevant herein.

18.     US Consumer Advocates is a Tennessee corporation which was incorporated by Mr. Phillips.  This company was administratively dissolved on August 8, 2018 but was operational when the majority of phone calls to Plaintiff Mey were placed. US Consumer Advocates is believed to be the successor to Advocus Legal Organization or Advocus Legal, Inc., which upon information and belief transacted business in the State of West Virginia or served as a conduit for individual Defendants' business transactions in this State.

19.     Thacker and Associates International, LLC is a Nevada corporation that maintains an address of 503 Ligon Dr Ste A, Nashville, TN 37204-2858, the identical address to Defendant Music City Ventures, Inc.  The Tennessee Secretary of State currently lists Thacker and Associates, International, LLC as administratively dissolved as of August 8, 2018. However, upon information and belief, the common Defendants herein named operated and continue to operate by and through this entity and/or Music City Ventures, Inc. and/or Bruyette and Associates, American Consumer Rights Organization, Tristar Consumer Group, Tristar Consumer Law, and possibly others.

20.     Bruyette and Associates, LLC is a Florida corporation transacting business in the State of West Virginia and was a lead generator for Tristar Consumer Law and/or other entities named herein.

21.     Defendant Sean Austin is a resident of Tennessee and partner at Defendant Capital Compliance Group, Inc.  Austin transacted business by and through certain of the above-named Defendant entities at times relevant herein.

22.     Defendant William Michael Keever is a resident of Tennessee who transacted business by and through certain of the above-named Defendants at times relevant herein, including but not limited to Castle Venture Group, Inc. and Castle Equity Group, Inc. William Michael Keever was the registered agent for Castle Venture Group, LLC and Castle Equity Group, Inc., and upon information and belief, was also the principal for Castle Venture Group, LLC.

23.     Defendant Ashley R. Keever is a resident of Tennessee who transacted business by and through certain of the above-named Defendants at times relevant herein. Ms. Keever is the registered agent for Castle Partners Inc., an active Tennessee corporation until August 8, 2018, that is believed to be a successor entity to Castle Equity Group Inc. Upon information and belief, each of these entities (and through them, Ms. Keever in her individual capacity) transacted business in the State of West Virginia.

24.     Defendant Steve Huffman is a resident of Tennessee who co-owns Defendant Music City Ventures, Inc. with John Preston Thompson.  Huffman transacted business in West Virginia by and through Music City Ventures, Inc. and certain of the above-named Defendants at times relevant herein.

25.     Defendant John Preston Thompson is a resident of Tennessee who co-owns Defendant Music City Ventures, Inc. with Defendant Huffman and is listed as the registered agent for that entity. Defendant Thompson transacted business in West Virginia by and through Music City Ventures, Inc. and certain of the above-named Defendants at times relevant herein.

26.     John Does 1-10 are individuals and entities liable for the claims advanced herein either in their own right or by collaboration, conspiracy, or joint enterprise with the above Defendants.  The identities of John Does 1-10 are currently unknown but will be revealed through investigation and discovery in this matter.

## JURISDICTION AND VENUE

27.      The initial Complaint in this case was filed in the Circuit Court of Ohio County, West Virginia.  Defendant Judson Phillips timely removed to this Court pursuant to 28 U.S.C. § 1441.

28.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

29.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the automated telemarketing calls to the Ms. Mey—occurred in this State.

30.     This Court possesses personal jurisdiction under the West Virginia Long Arm statute, W.Va. Code 56-3-33, because Defendants engaged in a persistent course of conduct and purposefully sought to transact business within this State, thereby having sufficient minimum contacts to satisfy due process concerns.

## JOINT ENTERPRISE AND ALTER EGO

31.     Defendants, or agents acting on their behalf and for their benefit, made calls to consumers using auto-dialers, pre-recorded messages, and live agents in order to sell purported debt relief services via lower interest rates on credit cards. In so doing, Defendants made a profit.

32.     Defendant Judson Phillips and other individual Defendants named herein are behind this vast web of inextricably intertwined corporate entities and scheme to place illegal telemarketing calls.

33.     Defendant Phillips was the incorporator and sole owner of Castle Law Group, P.C. ("Castle Law") and Tristar Consumer Law.

34.     Tristar Consumer Law has also operated as (or may have been succeeded by) Tristar Consumer Law Organization and/or American Consumer Rights Organization, jointly operated by Defendants Phillips, William Michael Keever, and Sean Austin.

35.     Castle Marketing Group is the successor to Castle Venture Group, both of which were owned by William Michael Keever and/or Sean Austin.  These groups provided telemarketing services for Castle Law Group, PC and related entities, including Tristar Consumer Law, Tristar Consumer Law Organization, and/or American Consumer Rights Organization.

36.     Mr. Phillips incorporated and was sole owner of Advocus Legal, Inc., a purported firm of timeshare attorneys.

37.     Mr. Phillips also incorporated Tristar Consumer Law Foundation, Advocus Legal Organization, and US Consumer Advocates.

38.     Mr. Phillips also incorporated and is sole owner of Capital Compliance Group, CO.   Defendant Austin was a partner in Capital Compliance Group, Inc., the predecessor to that company.

39.     Defendants Castle Law Group, PC; Castle Venture Group, LLC; Castle Equity Group, Inc.; Castle Partners Inc.; Castle Marketing Group, LLC; Tristar Consumer Group; Music City Ventures, Inc.; Tristar Consumer Law; Tristar Consumer Law Organization; American Consumer Rights Organization; Advocus Legal, Inc; Tristar Consumer Law Foundation; Capital Compliance Group, CO; Capital Compliance Group, Inc.; Capital Recovery Law, PC; Advocus Legal Organization; and US Consumer Advocates are collectively referred to as the "Castle Entities."

40.     The above-named Castle Entities are shams created as offshoots of other entities by Defendants Judson Phillips, Sean Austin, William Michael Keever, Ashley R. Keever, Steve Huffman, and/or John Preston Thompson operating in joint venture to carry out a single business enterprise. Those individual Defendants combined their property, money, effects, skill, and knowledge in a common conspiracy and undertaking. Defendants use these businesses as instruments or conduits for their personal gain or that of their other businesses.  Defendants divert the assets and funds derived from these entities—via an illegal telemarketing scheme— and manipulate their assets to the detriment of consumers and their customers and otherwise exploit the various corporate forums to reach more consumers.

41.     The individual Defendants, Castle Entities, Thacker and Associates International, LLC and Bruyette and Associates, LLC operate as alter egos of one another in a single economic enterprise.

42.     Piercing the corporate veil of each of the Castle Entities, Thacker and Associates International, LLC and Bruyette and Associates, LLC and imposing personal liability upon officers, managers, and members (including those named herein) is appropriate because (1) there is such unity of interest and ownership that the separate personalities of entities and individuals does not exist; and (2) fraud, injustice, or other inequitable results will occur if the veil is not pierced.

43.     Here, the corporate fictions created by the individual Defendants must be disregarded and the barrier to personal liabilities removed because Defendants used the web of Castle Entities, Thacker and Associates, LLC and Bruyette and Associates, LLC to perpetrate injustice in furtherance of a common purpose. Further investigation and discovery are expected to confirm that the (1) Defendants commingled funds and assets of the various entities with their personal assets; (2) Defendants diverted the entities' funds or assets for non-entity uses; (3) Defendants disregarded corporate or entity formalities; (4) individual Defendants possessed identical ownership stake in two or more entities; (5) individual Defendants were common directors and officers of two or more entities, responsible for the supervision and management of those entities; (6) individual Defendants failed to adequately capitalize the entities for the reasonable risks of corporate undertaking; (7) the entities lacked separately held assets; (8) the entities were used as shells or conduits to operate a single venture or some aspect of the business of the individuals or other entities; (9) the entities' stock was solely owned by one individual or members of a single family; (10) the same office or business site was used by the entities and their shareholders; (11) the entities shared employees or attorneys; (12) Defendants concealed or misrepresented the identity of the ownership, management or financial interests of the entities, and concealed personal business activities of the shareholders/owners; (13) Defendants

disregarded the legal formalities of the forums and failed to maintain proper arm's length

relationships with their entities; (14) Defendants used the entities to procure labor, services, or

merchandise for another person or entity; (15) Defendants diverted entity assets to the detriment

of creditors, or manipulated assets and liabilities between entities to concentrate assets in one and

liabilities in another; (17) Defendants used the entity forum as a subterfuge for illegal

transactions; (18) Defendants used the entity forum to assume existing liabilities of themselves

and other entities; and other factors as set forth in *Laya v. Erin Homes, Inc*., 352 S.E.2d 93

(W.Va. 1986).

<u>FACTS</u>

44.     Ms. Mey has never given express written consent for Defendants to call her, nor

does she have an established business relationship with any of the Defendants.

45.     Between March 6, 2018 and June 25, 2018, Defendants and/or their agents placed

approximately 25 calls to Ms. Mey's cellular telephone to sell their debt relief services offering

lower interest rates on credit card debt.

46.     During these calls, agents represented that they were affiliated with Defendants

Tristar Consumer Law, Tristar Consumer Group, and Bruyette & Associates, as well as other

Castle Entities and affiliates named herein.

47.     Ms. Mey's cell phone numbers have been registered on the federal Do Not Call

registry for over a decade.

48.     On March 6, 2018, Defendants' agent, "Tom Garden," called Ms. Mey and stated

that due to her excellent credit card payment history, she was pre-approved for a lower interest

rate on her credit card account.  Tom Garden represented that he was affiliated with Tristar

Consumer Law.

49.     When Ms. Mey asked how Mr. Garden knew her payment history, he falsely represented that he was associated with Citicard, her credit card company.

50.     To identify the caller and the company, Ms. Mey engaged in the qualification and application process.

51.     Ms. Mey provided her credit card number to Tom Garden who advised her that she was approved for a $22,282.00 credit line.  His company's fee would be $4,698.00.

52.     Mr. Garden then explained that he was the qualification officer for the law firm and that the law firm would call her "right back."

53.     Within the hour, an agent named "Joseph" called Ms. Mey and explained that he was affiliated with Tristar Consumer Group, "the processing company" for Tristar Consumer Law.

54.     When Ms. Mey inquired as to whether Joseph's company (Tristar Consumer Group) was associated with Mr. Garden's company (Tristar Consumer Law), Joseph stated that Mr. Garden had called on behalf of Defendant Bruyette & Associates, who supplied telemarketing leads to Tristar Consumer Group.

55.     When Ms. Mey requested the phone number for Bruyette & Associates, she was transferred to a different agent who not only declined to give the number, but became belligerent and hung up on Ms. Mey when she requested the company's do not call policy.

56.     Within the hour, Mr. Garden called Ms. Mey three more times, asking what had happened.  Mr. Garden again represented that he was calling on behalf of Tristar Consumer Law. Ms. Mey made a do not call request and the call ended.

57.     However, on a later date, Mr. Garden called Ms. Mey again and represented that his company was "Tristar Consumer Consultants" calling with regard to a debt validation program. Ms. Mey again asked that the agents stop calling her.

58.     On May 1, 2018, Plaintiff received a prerecorded call from Defendants on her cellular line.  As directed, Ms. Mey pressed 1 to speak to a live representative and was eventually connected with agent "Justin Staples." Mr. Staples said he was affiliated with "Supreme Interest Rates," a company purportedly within "GBD Wealth Management," whose website was gbdwealthmanagement.com.

59.     Supreme Interest Rates was a lead generator for Tristar Consumer Law.

60.     Within moments of this call, Ms. Mey received emails from several banks confirming that online applications had been submitted in her name.

61.     During a follow up call, Mr. Staples told Ms. Mey that she would receive credit cards from four different banks.  Once she selected a card, Defendants would transfer her balance to that card.

62.     On May 7, 2018, Ms. Mey received a call from an agent "Daniel Alex" who recited details from the previous May 1 call from Tristar Consumer Law or Supreme Interest Rates. Daniel Alex stated that he was Ms. Mey's "account and verification officer."

63.     Later that day, another agent with Tristar Consumer Law placed a call to Ms. Mey's cellular telephone line and confirmed that Tristar worked with Supreme Interest Rates who "sends them leads."  Ms. Mey requested the company's do not call policy, and made a do not call request. The representative hung up on her.

13

64.     Twenty minutes later, Daniel Alex called Ms. Mey to ask what went wrong during her call with Tristar.  Ms. Mey requested the name of his company.  When Mr. Alex continued to insist he was with card services, Ms. Mey hung up.

65.     Approximately 10-15 minutes later, Mr. Alex called back in retaliation for Ms. Mey's termination of the prior call. Ms. Mey said "hello," but Mr. Alex sat in silence and eventually hung up on her.

66.     Two minutes later, Mr. Alex called Ms. Mey again, and repeated his silence as before, tying up her phone line before eventually hanging up.

67.     On May 15, 2018, an agent "Breanna" with Supreme Interest Rates called Ms. Mey and attempted to sell similar debt relief and credit card services, specifically referring to Mey's previous calls with Justin Staples.

68.     Ms. Mey declined to give her information and asked for additional information concerning the calling company.  The call ended.  "Breanna" or her supervisor then sent an email from lexmarc.com and said they were affiliated with the international UK company found at gbdwealthmangement.com.

69.     Breanna's supervisor, "Christian" with Discount Rates, called Ms. Mey.  When Ms. Mey stated that she thought the company was Supreme Interest Rates, Christian said he was in the "discount rate department."  Ms. Mey made a do not call request and requested a copy of the company's do not call policy.

70.     Within minutes of those phone calls, the fraud department of Ms. Mey's credit card company called to alert her that someone tried to access her account.  Ms. Mey then cancelled her credit card to protect her account and private information.

71.     On June 25, 2018, agents from Bruyette & Associates emailed Ms. Mey "New Client Documents" for "Unsecured Debt Validation" through Tristar Consumer Law, PC. Those documents included an Engagement Agreement between Ms. Mey and Tristar Consumer Law PC, and a credit card authorization form purporting to pay $2,083.00 to Tristar for services. Bruyette & Associates requested her signature to execute those documents.

72.     Defendants continued to call Ms. Mey on other occasions throughout 2018 and during January 2019.

73.     During the course of these and other calls, Ms. Mey repeatedly requested—on at least nine separate occasions—that Defendants and their agents stop calling her.

74.     Ms. Mey also repeatedly requested copies of the Defendants' do not call policies.

75.     Throughout these calls, Defendants and/or their agents variously represented that they were affiliated with Citicard, Supreme Interest Rates of America, Tristar Consumer Law, Tristar Consumer Group, Bruyette & Associates, GBD Wealth Management, lexmarc.com, card services, and Discount Rate; and, on several occasions, failed to identify their company at all.

76.     These representations were confusing and misleading as to the caller's identity.

77.     Defendants placed other calls to Ms. Mey during this time frame which were autodialed and/or prerecorded.

78.     On February 6, 2020, over a year after the initial Complaint herein was filed, and while this case was being actively litigated, Defendants and/or their agents placed additional calls to Ms. Mey similar in nature to those described above.

79.     During these calls, Ms. Mey was connected to an agent named "Wendy" at Robinhood Negotiators, LLC, believed to be a lead generator for Defendants. Defendants again advertised lower interest rates, but provided deliberately misleading and confusing information

as to their identities. Further, two of the four the calls to Ms. Mey that day violated her previous

do not call request (excluding two return calls for which she granted express permission in order

to further identify the caller).

80.     Upon information and belief, the acts complained of herein were either the direct

acts of Defendants or the acts of agents authorized to act on their behalf, such that Defendants

are vicariously liable.

81.     In the alternative, the acts complained of herein were carried out by agents

operating for Defendants' benefit, or with actual, implied or apparent authority of Defendants,

such that Defendants are vicariously liable as to all Counts ascribed herein.

82.     In the alternative, Defendants ratified or accepted the benefits of the acts of their

agents as described herein, and are therefore jointly and severally liable as to all Counts ascribed

herein.

## COUNT I: VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA")

83.     The preceding paragraphs are incorporated by reference herein as if set forth in

their entirety.

84.     Defendants violated the TCPA, either directly or through the actions of others, by

initiating calls to Ms. Mey's cellular telephone line using an automatic telephone dialing system.

*See* 47 U.S.C. § 227(b)(1)(A).

85.     Defendants violated the TCPA, either directly or through the actions of others, by

initiating calls to Ms. Mey's residential line using an artificial or prerecorded voice.  *See* 47

U.S.C. § 227(b)(1)(B).

86.     Defendants violated the TCPA, either directly or through the actions of others, by initiating more than one telephone call to Ms. Mey in a twelve-month period while her number was on the National Do Not Call registry.  *See* 47 U.S.C. § 227(c).

87.     Defendants violated the TCPA, either directly or through the actions of others, by failing to clearly identify themselves during their calls with Ms. Mey.  *See* 47 C.F.R. § 64.1200 (d) (4).

88.     Defendants violated the TCPA, either directly or through the actions of others, by failing to produce their Do Not Call policies when requested by Ms. Mey.  *See* 47 C.F.R. § 64.1200 (d) (1).

89.     Each of Defendants' actions, or those of agents operating on their behalf, were willful and/or knowing.

WHEREFORE, Ms. Mey demands from Defendants injunctive relief, statutory penalties and damages as provided by law in the amount of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation, prejudgment and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

COUNT II:  VIOLATIONS OF THE WEST VIRGINIA CONSUMER
CREDIT AND PROTECTION ACT ("WVCCPA")

90.     The preceding paragraphs are incorporated by reference herein as if set forth in their entirety.

91.     Defendants and/or their agents are telemarketers as defined by W.Va. Code § 46A-6F-113.

92.     Plaintiff Diana Mey, is a consumer or purchaser as defined by W.Va. Code § 46A-6F-103.

93.     Defendants and/or their telemarketing agents sought to sell consumer goods or services to Ms. Mey as defined by W.Va. Code § 46A-6F-104, § 46A-1-102 (47)(c).

94.     Defendants and/or their agents phoned Ms. Mey with the purpose of making telemarketing solicitations as defined by W.Va. Code § 46A-6F-112.

95.     Defendants' and/or their agents' conduct as described above was unfair or deceptive and was likely to create confusion or misunderstanding to any reasonable consumer as proscribed by W.Va. Code § 46A-6F-501(a)(5), and did create such confusion and misunderstanding by Ms. Mey.

96.     This conduct constitutes unfair methods of competition and unfair or deceptive acts or practices by telemarketers in violation of W.Va. Code § 46A-6F-501(a)(8), § 46A-6-102(f) and § 46A-6-104, and Defendants are liable for each infraction.

97.     Accordingly, Ms. Mey is entitled to the penalties set forth in W.Va. Code § 46A-6F-502 in an amount determined by the court of not less than one hundred dollars nor more than three thousand dollars per violation of these provisions.

98.     Additionally, Defendants committed abusive acts or practices as defined by W.Va. Code §46A-6F-601(a)(1) because their agents threatened or intimidated Ms. Mey with their serial retaliatory calls, rude calls, and hang ups.

99.     Defendants committed abusive acts or practices as defined by W.Va. Code §46A-6F-601(a)(2) because their agents engaged Ms. Mey repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive, or harassing.

100.     Defendants committed abusive acts or practices as defined by W.Va. Code §46A-6F-601(a)(3) because their agents initiated outbound telephone calls to Ms. Mey despite the fact she made explicit do not call requests.

101.     Defendants committed abusive acts or practices as defined by W.Va. Code §46A-6F-601(a)(5) because their agents engaged in other conduct which would be considered abusive to any reasonable consumer.

102.     Each of Defendants' actions, or those of agents operating on their behalf, were done willfully or knowingly.

103.     Accordingly, Ms. Mey is entitled to relief from Defendants, jointly and severally, as provided by W.Va. Code § 46A-6F-701, including actual damages and a penalty in an amount to be determined by the court of not less than one hundred dollars and not more than three thousand dollars per violation.

104.     Ms. Mey is further entitled to an adjustment for inflation on any award of damages as provided by W.Va. Code § 46A-6F-701(e).

105.     Ms. Mey is entitled to, and reserves unto herself, all other remedies provided by law according to W.Va. Code § 46A-6F-702.

WHEREFORE, Ms. Mey demands from Defendants injunctive relief, statutory penalties and damages as provided by law, compensatory and punitive damages in an amount to be determined by a jury, prejudgment and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

<u>COUNT III:  THE WEST VIRGINIA COMPUTER CRIME AND ABUSE ACT</u>
<u>"WVCCAA"</u>

106.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

107.    Ms. Mey is a "person" as defined by The West Virginia Computer Crime and Abuse Act, W.Va. Code § 61-3C-3(n) as she is a "natural person."

108.    Defendants Judson Phillips, William Michael Keever, Ashley Keever, Sean Austin, Steve Huffman and John Preston Thompson are each a "person" as defined by The West Virginia Computer Crime and Abuse Act, W.Va. Code § 61-3C-3(n).

109.    The corporate and company Defendants listed above are each "person[s]" as defined by W.Va. Code § 61-3C-3(n) because each is a "limited partnership, trust association or corporation."

110.    In calling Ms. Mey, Defendants and/or their agents used an "electronic communication device" as defined by W.Va. Code § 61-3C-14(a) to make the calls described herein.

111.    Under the West Virginia Computer Crime and Abuse Act, W.Va. Code § 61-3C-1(a)(1), it is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to contact another without disclosing his or her identity with the intent to harass or abuse.

112.    Under the West Virginia Computer Crime and Abuse Act, W.Va. Code § 61-3C-1(a)(2), it is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to contact a person after being requested by the person to desist from contacting them.

113.    Defendants, or those acting on their behalf and for their benefit, violated each of the above provisions by making the calls described above, separately and collectively.

114.    Each of Defendants' actions, or those of agents operating on their behalf, were done willfully or knowingly.

115.    As a direct and proximate result of Defendant's conduct and the violations of the WVCCAA, Ms. Mey was injured in and about her person or property.  She has been annoyed, inconvenienced, upset, angered, and has suffered indignation and severe emotional distress.

116.    Ms. Mey is entitled to civil relief for these injuries including compensatory and punitive damages and other relief as the court deems appropriate, as articulated in W.Va. Code § 61-3C-16(a).

WHEREFORE, Ms. Mey demands from Defendants injunctive relief, statutory penalties and damages as provided by law, compensatory and punitive damages in an amount to be determined by a jury, prejudgment and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117.    The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

118.    In threatening and intimidating Ms. Mey, harassing her with serial and repeated phone calls despite her multiple do not call requests, hanging up on Ms. Mey, and subjecting her to other exceedingly rude behavior, Defendants, by and through their agents, engaged in conduct that was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

119.     Defendants, by and through its agents, acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from their conduct.

120.     The actions of Defendants, by and through their agents, caused Ms. Mey to suffer severe emotional distress.

121.     The emotional distress suffered by Ms. Mey as a result of Defendants' actions and/or those of their agents was so severe that no reasonable person could be expected to endure such conduct.

WHEREFORE, Ms. Mey demands injunctive relief, compensatory and punitive damages of Defendants in an amount to be determined by a jury, together with prejudgment and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

### COUNT V: VIOLATIONS OF THE WEST VIRGINIA UNFAIR OR DECEPTIVE TRADE PRACTICES ACT, W.VA. CODE § 46A-6-104

122.     The preceding paragraphs are incorporated by reference as if set forth in their entirety herein.

123.     By the conduct described above, Defendants engaged in unfair or deceptive acts or practices in violation of W.Va. Code § 46A-6-104.

124.     Specifically, Defendants' unfair and deceptive acts or practices included the following as defined in W.Va. Code § 46A-6-102:

> A.  Passing off goods or services as those of another in violation of § 46A-6-102(7)(A);

B.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services in violation of § 46A-6-102(7)(B);

C.  Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another in violation of § 46A-6-102(7)(C);

D.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have in violation of § 46A-6-102(7)(E);

E.  Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding in violation of § 46A-6-102(7)(L);

F.  Using any deception, fraud, false pretense, false promise or misrepresentation, or concealing, suppressing or omitting any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby in violation of § 46A-6-102(7)(M);

G.  In such other ways as may become apparent through further investigation and discovery.

125.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered actual out-of-pocket losses, including but not limited to unwanted charges to her cellular phone.

126.     Prior to filing her initial Complaint, Plaintiff informed Defendants in writing by certified mail, return receipt requested, of these alleged violations and provided them twenty days from receipt of such notice to make a cure offer.

WHEREFORE, Plaintiff demands injunctive relief, statutory penalties for each violation, compensatory and punitive damages of Defendants in an amount to be determined by a jury, together with prejudgment and postjudgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated:  April 10, 2020                          Respectfully submitted,

                                               **DIANA MEY,**
                                               By Counsel,

                                               _/s/ Sharon F. Iskra_
                                               John W. Barrett (WV Bar No. 7289)
                                               Jonathan R. Marshall (WV Bar No. 10580)
                                               Sharon F. Iskra (WV Bar No. 6582)
                                               BAILEY & GLASSER LLP
                                               209 Capitol Street
                                               Charleston, WV  25301
                                               Telephone: (304) 345-6555
                                               jbarrett@baileyglasser.com
                                               jmarshall@baileyglasser.com
                                               siskra@baileyglasser.com