# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### WHEELING

**DIANA MEY,**

        Plaintiff,

**v.**

                                **CIVIL ACTION NO. 5:19-CV-185**
                                **(BAILEY)**

**CASTLE LAW GROUP, PC,** a
Tennessee Corporation, **JUDSON
PHILLIPS,** Esq., an individual,
**CASTLE VENTURE GROUP, LLC,**
a Tennessee limited liability company,
**CASTLE EQUITY GROUP,
INC.,** a Tennessee Corporation,
**CASTLE PARTNERS INC.,** a
Tennessee Corporation, **CASTLE
MARKETING GROUP, LLC,** a
Tennessee limited liability company,
**TRISTAR CONSUMER GROUP,** a
Tennessee Corporation, **MUSIC
CITY VENTURES, INC.,** a
Tennessee Corporation, **TRISTAR
CONSUMER LAW,** a Tennessee
Corporation, **TRISTAR CONSUMER
LAW ORGANIZATION,** a Tennesee
Corporation, **AMERICAN CONSUMER
RIGHTS ORGANIZATION,** a
Tennessee Corporation, **ADVOCUS
LEGAL, INC.,** a Tennessee corporation,
**TRISTAR CONSUMER LAW
FOUNDATION,** a Tennessee Corporation,
**CAPITAL COMPLIANCE GROUP, CO.,**
a Tennessee Corporation, **CAPITAL
COMPLIANCE GROUP, INC.,** a
Tennessee Corporation, **CAPITAL
RECOVERY LAW, PC,** a Tennessee
Corporation, **ADVOCUS LEGAL
ORGANIZATION,** a Tennessee
Corporation, **US CONSUMER**

**ADVOCATES,** a Tennessee Corporation,
**THACKER AND ASSOCIATES
INTERNATIONAL, LLC,** a foreign
limited liability company, **BRUYETTE
AND ASSOCIATES, LLC,** a Florida
Corporation, **SEAN AUSTIN,** an
individual, **WILLIAM MICHAEL
KEEVER,** an individual, **ASHLEY R.
KEEVER,** an individual, **STEVE
HUFFMAN,** an individual, **JOHN
PRESTON THOMPSON,** an individual,
**JOHN DOES 1-10,** corporate entities
and individuals presently unknown**,**

Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Currently pending before this Court are six motions to dismiss filed by defendants in this case: first, a Motion filed by defendant Judson Phillips [Doc. 65] on April 24, 2020; second, a Motion filed by defendant Capital Compliance Group, Co. [Doc. 67] on April 28, 2020; third, a Motion filed by defendant Sean Austin [Doc. 70] on May 5, 2020; fourth, a Motion filed by defendant Steve Huffman [Doc. 72] on May 5, 2020; fifth, a Motion filed by defendant John Preston Thompson [Doc. 74] on May 5, 2020; and, finally, a Motion filed by Music City Ventures, Inc. [Doc. 80] on May 15, 2020. On May 7, 2020, when five of the six motions had been filed, this Court granted plaintiff's request for a consolidated briefing schedule [Doc. 79], giving plaintiff until May 19, 2020 to file a consolidated response, and giving movants until May 26, 2020, to file replies. On May 19, 2020, plaintiff filed a memorandum in response to all six of the motions. To date, no reply has been filed to the response. Accordingly, these motions are all fully briefed and ripe for decision. For the reasons that follow, this Court will deny the motions to dismiss.

2

## BACKGROUND

This case arises out of a series of phone calls allegedly made to plaintiff by defendants.  According to the Second Amended Complaint ("the Complaint"), defendants or their agents made a series of calls to plaintiff, who is on the do not call list, between March 6 and July 25, 2018.  [Doc. 63 at 8, 11].  These included calls using auto-dialers and pre-recorded messages selling debt relief services.  [Id. at 8].  The Complaint asserts five causes of action: violations of the Telephone Consumer Protection Act ("TCPA"), violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), violations of the West Virginia Computer Crime and Abuse Act ("WVCCAA"), intentional infliction of emotional distress, and violations of the West Virginia Unfair or Deceptive Trade Practices Act, W.Va. Code § 46A-6-104.  [Id. at 16–22].

On January 24, 2019, plaintiff filed suit in the Circuit Court of Ohio County, West Virginia.  On May 28, 2019, defendant Phillips filed a Notice of Removal [Doc. 1], removing the action to this Court based on both diversity and federal question jurisdiction.

On April 24, 2020, defendant Phillips filed a motion to dismiss.  [Doc. 65].  In his memorandum in support, Phillips raises several arguments for dismissal.  First, he argues there are no specific allegations pertaining to him; there are no specific allegations that he made any calls to plaintiff, that he used an autodialer to make said calls, or that he used recordings or artificial voices.  [Doc. 66 at 4-8].  Further, he argues that plaintiff waived any argument of being contacted against her will by voluntarily engaging in a qualification process with the alleged telemarketers.  [Id. at 5–6].  Second, Phillips argues that he cannot be considered a "telemarketer" for purposes of the WVCCPA because the act does not apply to licensed attorneys.  [Id. at 8–9].  Third, he argues that the WVCCAA is a

3

criminal statute requiring specific intent, and, as such, without allegations that Phillips made any calls, plaintiff cannot show he intended to abuse or harass plaintiff. [Id. at 9]. Fourth, he claims that the intentional infliction of emotional distress claim must be dismissed because plaintiff has not alleged facts to show she sought mental health treatment because of the alleged calls. [Id. at 10]. Fifth, because there are no allegations that he specifically made said calls, Phillips argues "the West Virginia Unfair or Deceptive Trade Practices Act is inapplicable to the facts as pled." [Id.]. Finally, Phillips argues that because the Complaint recites mere legal conclusions, there is nothing to justify piercing the corporate veil of various corporate defendants. [Id. at 12–13].

Next, on April 24, 2020, defendant Capital Compliance Group Co. filed a motion to dismiss [Doc. 67]. Capital Compliance Group Co. raises two arguments in its memorandum in support. First, that the complaint fails to specifically allege "what Defendant Capital Compliance Group Co. did or not do" and that as a result the complaint fails to meet the *Twombly* standard. [Doc. 68 at 3–4]. Second, that the claims must fail because "Capital Compliance Group Co. was not in existence at the time any of the purported calls to Plaintiff were made." [Id. at 5]. Further, Capital Compliance Group Co. makes the same argument as Phillips' that plaintiff waived any argument of being contacted against her will by participating in the certification process. [Id. at 6].

Next, between May 5, 2020, and May 15, 2020, there were four more motions to dismiss filed by different defendants: by Sean Austin [Doc. 70], by Steve Huffman [Doc. 72], by John Preston Thompson [Doc. 74], and by Music City Ventures, Inc. [Doc. 80]. Although filed separately, these motions all put forward the same arguments: that this Court lacks personal jurisdiction over each of these defendants; that the complaint fails to

4

allege any facts specific to each of these defendants on any of the claims; that Mey waived her argument of being contacted against her will by engaging in the certification process; and, finally, that there are not sufficient facts alleged to support piercing the corporate veil. Each of these defendants asks to be dismissed from this case.

Pursuant to an Order [Doc. 79] granting a motion to allow plaintiff a consolidated briefing schedule, plaintiff filed Plaintiff's Omnibus Memorandum of Law in Opposition to the Motions to Dismiss [Doc. 82] (the "response").  Therein, plaintiff addresses all six motions to dismiss in one document, rather than filing six separate documents detailing the same arguments.

First, plaintiff argues that the Complaint makes sufficient allegations that the defendants participated in a joint enterprise to carry out a single business enterprise, that several of the corporate defendants are "shams created as offshoots of other entities by Defendants Phillips, Austin, Huffman, and Thompson," and that defendants engaged in a common conspiracy and undertaking.  [Id. at 12–13].  Thus, plaintiff argues she has sufficiently alleged facts to support her claim that defendants operate as alter egos of one another in a single economic enterprise.  [Id.].  Further, plaintiff argues that the existence and scope of agency relationships are a factual matter to be decided by the jury. [Id. at 14], citing *Metco Prods., Inc. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989), *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019).

Second, plaintiff argues this Court has personal jurisdiction over all defendants. Specifically, through plaintiff's theory of defendants operating as alter egos of one another, all defendants are alleged to have been responsible for twenty-five calls made to Mey in

West Virginia; under the TCPA, personal jurisdiction is proper in the District where an unlawful communication was received. [Doc. 82 at 10–13].

Third, for each of the claims, plaintiff relies on an earlier Order from this Court [Doc. 16] denying an earlier motion to dismiss from defendant Phillips, arguing that this Court has already held that plaintiff had alleged her claims with sufficient specificity to survive a motion to dismiss. [Doc. 82 at 14-25].

Fourth, as to the argument made by Capital Compliance Group Co. that it was incorporated after the purported calls, plaintiff makes two arguments in response: first, that the initial filing Capital Compliance Group Co. attached is outside the pleadings and cannot be considered in a motion to dismiss, and that it

> does not provide any information as to whether Capital Compliance Group Co., as successor to Capital Compliance Group, Inc., took on its predecessor's liabilities including claims arising from the illegal phone calls made before it was formed.

[Id. at 16]. Second, the plaintiff points out that the Complaint includes allegations of calls made after Capital Compliance Group Co. claims it was formed. [Id. at 17].

Fifth, as to defendants' arguments that Mey waived any argument that she was contacted against her will by engaging in a certification process, plaintiff points out that she did not give express *prior* consent to any of the calls; further, that the pleadings include allegations that she continued on multiple calls to ask that defendants stop calling her. [Id. at 19].

Sixth, as to defendant Phillips' argument that he cannot be considered a telemarketer under the WVCCPA because he is a licensed attorney, plaintiff argues that

this is a question of fact inappropriate for a motion to dismiss and that this is a misreading of the statute. [Id. at 22-23].

Seventh, as to Phillips' argument that the WVCCAA claim must fail because it is a criminal statute requiring specific intent, plaintiff points out that W.Va. Code § 61-3C-16, under which plaintiff is suing, creates a private cause of action. [Id. at 24].

## LEGAL STANDARD

When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).   However, when the "the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Id.*  This Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences

in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

## DISCUSSION

First, several of the defendants raise arguments that claims made by the plaintiff must fail because they do not name each specific defendant in all of the allegations. E.g., "Count two alleges no act or omission committed by Mr. Thompson which would sustain

any cause of action against him for a violation of the WVCCPA." [Doc. 75 at 11]. These assertions ignore plaintiff's allegations that defendants operated as part of a "vast web of inextricably intertwined corporate entities and scheme to place illegal telemarketing calls." [Doc. 63 at 8]. In the Complaint's "Joint Enterprise and Alter Ego" section, plaintiff makes specific allegations that the individual defendants Phillips, Austin, Michael Keever, Ashley R. Keever, Huffman, and Thompson created a set of corporations which are either sham corporations or alter egos of one another. [Id. at 8–11]. "'Piercing the corporate veil' is an equitable remedy, the propriety of which must be examined on an ad hoc basis." *Laya v. Erin Homes, Inc.*, 177 W.Va. 343, 347, 352 S.E.2d 93, 98 (1986). The determination of whether to pierce the corporate veil is a fact intensive inquiry involving a number of relevant factors. *See Dailey v. Ayers Land Dev., LLC*, 241 W. Va. 404, 414, 825 S.E.2d 351, 361 (2019); *Laya v. Erin Homes, Inc.*, 177 W. Va. 343, 344, 352 S.E.2d 93, 94 (1986) ("The propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment. Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence."). This Court finds that plaintiff has made sufficient allegations to plausibly allege vicarious liability on the part of all defendants for the alleged conduct.

Because the defendants are alleged to be jointly responsible for the calls made to plaintiff, the Complaint sets forth a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In an earlier order in this case, Judge Stamp found that "calling Mey's number in West Virginia 25 times, as alleged in the complaint, demonstrates that Phillips purposely availed himself of the privilege of

conducting business in the state of West Virginia." [Doc. 16 at 10]. This Court sees no reason why the same should not hold true for the other defendants.

Next, all of the defendants motions attack plaintiff's claims on the basis that they lack sufficient factual allegations to sustain a claim against defendants. Although specific to Mr. Phillips, the following passage from his memorandum of law adequately summarizes defendants argument on this point:

> There is no particularity or specificity in the complaint as to what Mr. Phillips did or not do. Beyond the bare assertion that telephone calls were made between March 6, 2018 and June 25, 2018, Plaintiff fails to state each actual date of the purported calls, from which number the calls were made, what time of the day the calls were made, by whom the calls were made, and what the substance of each of the approximately 25 calls were.

[Doc. 66 at 4]. For each of the causes of action, plaintiff argues that defendants' arguments fail because, among other reasons, this Court has already ruled on these same arguments. On June 14, 2019, defendant Phillips filed a motion to dismiss in which he argued that

> In this case, the Plaintiff makes a general statement about Judson Phillips, without any factual allegations of any actions by him to claim that somehow, he is potentially responsible for the acts of another party. The pleadings simply use the vague term "Defendants" without specifying any action any specific person engaged in.

[Doc. 7 at 6]. By memorandum opinion and order dated September 20, 2019, Judge Stamp analyzed plaintiff's complaint under the 12(b)(6) standard and found that

> Mey has met this standard, and the claims alleging violations of the TCPA (Count I), the WVCCPA (Count II), the WVCCAA (Count III), the UTPA (Count IV), and intentional infliction of emotional distress (Count IV) (sic) **are pled with sufficient specificity.**

[Doc. 16 at 10] (emphasis added). Although the previous order and motion to dismiss dealt with the original Complaint rather than the Second Amended Complaint, the underlying

factual allegations are the same other than the addition of allegations regarding joint enterprise and alter ego, addressed above.  Accordingly, this Court finds that the factual allegations laid out in the Complaint are pled with sufficient specificity.

Next, Capital Compliance Group Co. argues that the claims against it must be dismissed because it was incorporated after the alleged calls.  Plaintiff responds that as Capital Compliance Group Co. is the successor to Capital Compliance Group, Inc., it is unclear whether Capital Compliance Group Co. took on its predecessor's liabilities.  [Doc. 82 at 23].  Plaintiff argues that "[s]ucessor liability is a fact-specific inquiry not appropriate for resolution on a motion to dismiss.  [Id.], citing *Persaud v. Bank of America, N.A.*, No. 14-21819-CIV, 2014 WL 4260853 at *5 (S.D. Fla. Aug 28, 2014).   This Court has previously found that "many courts have declined to dispose of the plaintiff's successor liability claims at the motion to dismiss stage because the claims need factual development." *Diloreti v. Countrywide Home Loans, Inc.*, Civ. A. No. 5:14-CV-76, 2014 WL 12771142, at *6 (N.D. W.Va. Nov. 14, 2014) (Bailey, J.).  The Court will do the same here, and Mey's claims against Capital Compliance Group Co. survive this argument at the motion to dismiss stage.

Next, as to defendants' argument that plaintiff consented to be contacted, this rests solely on plaintiff's allegation that she engaged in a credit card qualification process in order to identify the caller and company.  Defendants contend that by doing this Mey "in essence, provided her consent to receive any calls," and that she "attract[ed] calls after the initial call." [Doc. 68 at 6, Doc. 66 at 6].  "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017),

11

(citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008)).  Resolving all doubts and inferences in favor of the plaintiff, the defendants have not met their burden of showing that engaging in a credit card qualification process to identify the caller constitutes prior express consent.

Next, Mr. Phillips argues that because he contends he was a licensed attorney at the time the calls were made, "[h]e cannot, therefore, be considered a 'telemarketer' pursuant to the West Virginia Code § 46A-6F-203 which provides that the Act does not apply to any persons regulated by a self-regulatory organization or agency of any state of the United States." [Doc. 66 at 8].  Phillips then quotes the following section of the statute:

> The provisions of this article do not apply to any licensed associated person of a securities, commodities, or investment broker, dealer, or investment adviser, when soliciting within the scope of his license. As used in this section, "licensed associated person of a securities, commodities, or investment broker, dealer, or investment adviser" means any associated person registered or licensed by the National Association of Securities Dealers or other self-regulatory organization as defined by the Securities Exchange Act of 1934 (15 U.S.C. § 78l) or by an official or agency of this state or of any state of the United States.

W.Va. Code § 46A-6F-203.  Within the context of the section, this Court does not agree that this was intended to broadly include all licensed attorneys in the scope of "licensed associated person[s] of a securities, commodities, or investment broker, dealer, or investment adviser."  Second, even assuming membership in the Tennessee State Bar is enough to meet this definition, defendant has not shown that the allegations on the face of the Complaint show that the calls were made "when soliciting within the scope of his license."  Third, as plaintiff points out in her response, whether Phillips was a licensed attorney at the time of the calls is a question of fact, which at the motion to dismiss stage this Court resolves in favor the plaintiff.

12

Finally, the Court addresses defendants' claim that "the WVCCAA is a criminal statute requiring specific intent." [Docs. 71 at 12, 73 at 12, 75 at 12].  This Court finds this argument is without merit.  The Complaint claims that Mey is entitled to relief under W.Va. Code § 61-3C-16(a).  The section, entitled "Civil relief; damages" creates a private cause of action allowing for compensatory and punitive damages.

## CONCLUSION

In light of the foregoing, the Motions to Dismiss [Docs. 65, 67, 70, 72, 74, & 80] are hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June **23**, 2020.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

13