# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DIANA MEY,**

       **Plaintiff,**

v.

**CASTLE LAW GROUP, PC,**
A Tennessee Corporation;
**JUDSON PHILLIPS, ESQ.,**
An individual;
**CASTLE VENTURE GROUP, LLC,**
A Tennessee Limited Liability Company
**CASTLE EQUITY GROUP, INC.,**
A Tennessee Corporation;
**CASTLE PARTNERS, INC.,**
A Tennessee Corporation;
**CASTLE MARKETING GROUP, LLC,**
A Tennessee Limited Liability Company;
**TRISTAR CONSUMER GROUP,**
A Tennessee Corporation;
**MUSIC CITY VENTURES, INC.,**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW,**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW ORGANIZATION;**
A Tennessee Corporation;
**AMERICAN CONSUMER RIGHTS ORGANIZATION;**
A Tennessee Corporation;
**ADVOCUS LEGAL, INC;**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW FOUNDATION,**
A Tennessee Corporation;
**CAPITAL COMPLIANCE GROUP, CO.,**
A Tennessee Corporation;
**CAPITAL COMPLIANCE GROUP, INC.,**
A Tennessee Corporation;
**CAPITAL RECOVERY LAW, PC,**
A Tennessee Corporation;
**ADVOCUS LEGAL ORGANIZATION,**
A Tennessee Corporation;
**US CONSUMER ADVOCATES,**
A Tennessee Corporation;
**THACKER AND ASSOCIATES INTERNATIONAL, LLC,**
A Foreign Limited Liability Company;
**BRUYETTE AND ASSOCIATES, LLC,**
A Florida Corporation;
**SEAN AUSTIN, an individual;**
**WILLIAM MICHAEL KEEVER, an individual;**

Civil Action No. 5:19-CV-185

1

**ASHLEY R. KEEVER, an individual;**
**STEVE HUFFMAN, an individual;**
**JOHN PRESTON THOMPSON, an individual;**
**And JOHN DOES 1-10, corporate entities and individuals**
**presently unknown,**

        **Defendants.**

### DEFENDANTS MUSIC CITY VENTURES, INC., JOHN PRESTON THOMPSON AND STEVE HUFFMAN'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT ON THE RECORD

Come the Defendants, Music City Ventures, Inc., John Preston Thompson, and Steve Huffman (collectively, the "MCV Defendants"), by and through counsel, and hereby submit the following Response in Opposition to Plaintiff's Motion for Entry of Default Judgment on the Record.

### I. INTRODUCTION

Plaintiff has requested the Court to award her damages, all consisting of statutory penalties under the Telephone Consumer Privacy Act ("TCPA") and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), in excess of $500,000 for phone calls that she claims to have received over a period of approximately three years. Plaintiff's request is based on her three-paragraph affidavit and various exhibits, including a chart containing some information regarding the phone calls and a "table of statutory violations." Plaintiff contends that she has carried her burden of proof with respect to damages with these filings and requests that the Court enter judgment without conducting an evidentiary hearing of any kind.

The MCV Defendants recognize that the Court has entered default judgment against them, which prohibits the MCV Defendants putting on proof or arguing that the MCV Defendants were not in the business of making outbound calls, made no outbound calls to Plaintiff or anyone else during this time period, and are not the alter ego of any individual or entity who made any such calls. Constrained as they are from defending themselves, the MCV Defendants respectfully

contend that Plaintiff has not carried her burden of establishing that she is entitled to anything close to $500,000 in statutory penalties. As set forth below: (a) as Plaintiff herself concedes, the default judgment results only in the admission of facts alleged in the Complaint, yet Plaintiff seeks penalties for scores of calls that are not mentioned in the Second Amended Complaint [Doc 63]; (b) many of the calls were made by entities who were not sued and were not mentioned in the Second Amended Complaint, and thus there is no admission that the MCV Defendants are alter egos of these entities (the MCV Defendants, in fact, don't even know who these entities are); (c) Plaintiff seeks penalties for violations of sections of the TCPA for which there is no private remedy; (d) Plaintiff has not carried her burden of establishing, on a per violation basis, the conduct necessary for penalties available under the WVCCPA; (e) the penalties provided by the remedy sections of the WVCCPA upon which Plaintiff relies are per action and not per violation; (f) Plaintiff has not established that she is entitled to the $3000 penalty under the WVCCPA, assuming that the is penalty is per violation.

## II. ARGUMENT

### A. A DEFAULT JUDGMENT ONLY CONSTITUTES AN ADMISSION OF THE WELL PLEADED FACTS IN THE COMPLAINT

"Upon default, "all of the well-pleaded facts alleged in the Complaint, as to liability, are deemed admitted, but the amount of damages are not." *Williams v. Ali*, 2019 WL 11201549, at *5 (N.D.W. Va. Dec. 2, 2019), *report and recommendation adopted,* 2020 WL 4558904 (N.D.W. Va. Aug. 7, 2020)(citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). However, Federal Rule of Civil Procedure 54(c) "limits the court's discretion in entering default judgment: a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Id.* "The court must, therefore, determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in this action." *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd,* 822 F.2d 56 (table), 1987 WL 36124 (4th

Cir.1987). Plaintiff, in fact, recognizes this, citing *Ryan* for the proposition that "[i]n considering a motion for default judgment, the Court generally takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages." [Doc 266].

Importantly, a default judgment only constitutes an admission of facts alleged in the Complaint. It does not constitute an admission of legal conclusions in the complaint. *Ryan*, 253 F.3d at 780. Thus Plaintiff must establish that the facts deemed admitted constitute cognizable causes of action and resulting damages.

The Second Amended Complaint [Doc 63] alleges that "[b]etween March 6, 2018 and June 25, 2018 Defendants and/or their agents placed approximately 25 calls to Ms. Mey's cellular telephone to sell their debt relief services offering lower interest rates on credit card debt." [Doc 63, ¶ 45]. The Second Amended Complaint specifically alleges the following phone calls:

(a) a March 6, 2018 call from Tom Garden (stating he was affiliated with Tristar Consumer Law ("TCL"));

(b) After Ms. Mey "engaged in the qualification and application process" offered by Mr. Garden, "Joseph," also allegedly affiliated with TCL, called her within the hour;

(c) Three more calls by Mr. Garden on the same day (Ms. Mey had requested the phone number for Bruyette & Associates and, according to the Complaint, had been hung up on by the agent, and Mr. Garden was calling back to see what had happened);

(d) Another phone call from Mr. Garden "on a later date;"

(e) A "prerecorded call from Defendants" on May 1, 2018, whereupon Ms. Mey was connected with "Justin Staples," who was affiliated with "Supreme Interest Rates (which Ms. Mey alleges was a "lead generator" for TCL);"

(f) A follow-up call from Mr. Staples;

(g) A May 7, 2018 call from "Daniel Alex;"

(h) Another call on May 7 from "another agent with TCL;"

  (i)  Three more calls by Daniel Alex on May 7, 2018;

  (j)  A May 15, 2018 call from "Breanna" with Supreme Interest Rates;

  (k)  A call from Breanna's supervisor "Christian,"

  (l)  Four calls on February 6, 2019 from "Wendy" at Robinhood Negotiators, LLC.

[Doc 63, ¶¶ 48-82].

  Pursuant to Rule 54(c), *Ryan,* and the other cases cited above, the default judgment entered by the Court *only* constitutes an admission by Defendants that they made "approximately 25" calls to Plaintiff, including the specific phone calls discussed in the Second Amended Complaint. Anything more would result in a judgment that "differs in kind from, or exceed in amount," what is demanded in the Second Amended Complaint.

  The default judgment also constitutes an admission that the MCV Defendants are the alter egos of or joint venturers with a myriad of entities and persons listed in paragraphs 32-43 of the Second Amended Complaint. It does not, however, constitute an admission that the MCV Defendants (or any other defendant) are alter egos of any other person or entity. Any judgment based on the MCV Defendants being alter egos of any other entity or person would be "different in kind from" the judgment demanded in the Second Amended Complaint. This is discussed in more detail below.

**B.  There is no Private Cause of Action for Violations of 47 C.F.R. 64.1200(d)(1) or (4)**

  Plaintiff claims damages for twenty violations of 47 C.F.R. 64.1200(d)(4) and four violations of 47 C.F.R. 64.1200(d)(4). These regulations were promulgated pursuant to 47 U.S.C. § 227(d), for which there is no private right of action. "There is no private right of action for violations of 47 C.F.R. § 64.1200(d)." *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019), *amended on denial of reconsideration,* 2019 WL 5722207

(W.D. Okla. Nov. 5, 2019). Therefore, Plaintiff is not entitled to any damages for these twenty-four alleged violations.

### C. Plaintiff has not Carried her Burden of Establishing Violations of the WVCCPA with reasonable Certainty

Plaintiff has identified the following provisions of the WVCCPA that she claims were violated by Defendants: W. Va. Code § 46A-6F-501(a)(5), (8), and (9); and § 601(a)(2), (3), and (5).

The provisions in § 501 relied on by plaintiff are related to deceptive conduct, and Plaintiff maintains that these provisions were violated because the callers' representations were "confusing and misleading as to the caller's identity."

The provisions in § 601 relied on by Plaintiff prohibit: (a) "Engag[ing] any person repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive or harassing;" (b) "Initiat[ing] an outbound telephone call to a person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the telemarketer whose goods or services are being offered;" and (c) "Engag[ing] in any other conduct which would be considered abusive to any reasonable consumer."

As Plaintiff pointed out in her memorandum, "Plaintiff has the burden of establishing damages with reasonable certainty." Thus, in order for each call to constitute a violation of the WVCCPA, Plaintiff must establish with reasonable certainty either that the call: (a) was confusing and misleading as to the caller's identity; (b) constitutes repeated or continuous behavior that a reasonable person would deem to be annoying, abusive or harassing; (c) was an outbound call to plaintiff when she had previously stated to the telemarketer that she does not wish to receive calls; or (d) constituted conduct that would be considered abusive to a reasonable consumer.

Regarding calls that are only outbound calls to plaintiff when she had previously stated to the telemarketer that she does not wish to receive calls, Defendants contend that this is the exact same injury for which Plaintiff seeks recovery under the TCPA, and thus Plaintiff cannot recover under both statutes for these calls.

In *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982), the West Virginia Supreme Court stated as follows:

> It is generally accepted that there can only be one recovery of damages for one injury. This rule is summarized in 25 C.J.S. *Damages* § 3 at 629 (1966):
>
> 'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories, ...'

*See also White v. Nat'l Steel Corp.*, 742 F. Supp. 312, 336 (N.D.W. Va. 1989), *aff'd in part, rev'd in part,* 938 F.2d 474 (4th Cir. 1991)(there can be only one recovery of damages for one wrong or injury ... A plaintiff may not recover damages twice for the same injury simply because he has two legal theories"). This doctrine also applies where a plaintiff seeks a remedy under both a federal statute and state law for the same injury. *See, e.g. Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 460–61 (4th Cir. 2011)("Because Gordon may not recover duplicative damages for the same injury under both the [Servicemembers Civil Relief Act] and Virginia conversion law, Pete's Towing faces no new liability under SCRA § 802(a)").

Regardless of whether *Harless* applies to some of the calls, Plaintiff has not established in the Complaint that she is entitled to damages pursuant to the WVCCPA for many of the calls described in the Complaint, or the many other calls for which she now seeks damages. In neither her affidavit nor her Memorandum in Support of her Motion does Plaintiff makes any effort to explain how any specific call violated a specific provision the WVCCPA, and instead offers only a chart, in which Plaintiff apparently contends that every call violated the statute. Defendants

7

respectfully submit that this is insufficient, and that Plaintiff must demonstrate that each call for which she seeks damages pursuant to the WVCCPA fits into one of the statutory subsections that Plaintiff claims was violated.

An examination of the calls specifically discussed in the Second Amended Complaint reveals that Plaintiff is not entitled to damages under the WVCCPA for many, if not all, of them. As a non-exclusive example, at least the first three calls on March 6, 2018 were made before Plaintiff asked anyone not to call her. In fact, Ms. Mey "engaged in the qualification and application process offered by "Tom Garden," who obviously identified himself and stated whom he represented. These three calls cannot be construed as "annoying, abusive, or harassing," since Plaintiff engaged in the process and thus invited more communication.

Regarding the statutory prohibition of against "engaging any person repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive or harassing," the WVCCP provides no guidance in determining the behavior that constitutes violation. However, the debt collection portion of the WVCCPA provides specific guidelines regarding what constitutes abusive conduct that is instructive:

> (a) The use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;
>
> (b) Engaging any person in telephone conversation without disclosure of the caller's identity and with the intent to annoy, harass or threaten any person at the called number;
>
> (c) Causing expense to any person in the form of long distance telephone tolls, telegram fees or other charges incurred by a medium of communication, by concealment of the true purpose of the communication; and
>
> (d) Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number. In determining whether a debt collector's conduct violates this section, the debt collector's conduct will be evaluated from the standpoint of a reasonable person. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for

> communicating with a consumer is after eight o'clock antemeridian and before nine o'clock postmeridian, local time at the consumer's location."

W. Va. Code Ann. § 46A-2-125. None of the phone calls specifically described in the Second Amended Complaint (or the other phone calls contained in Plaintiff's exhibits) evidence conduct that would be deemed abusive under these definitions.

Although Plaintiff has failed to identify the specific subsection of the WVCCPA that each call allegedly violates, it is important to note that to the extent that Plaintiff alleges that a series of calls, taken together, was abusive or harassing, each individual call would not be considered a violation unless it was abusive or harassing in its own right. For example, the Complaint alleges that there were five calls on March 6, 2018, including two calls in which she alleges "Tom Garden" hung up on her. Although Defendants contend that the March 6 calls were not abusive or harassing, if the Court were to determine that, taken together, they were, this would only constitute *one* violation of the WVCCPA, not five.

Regardless, simply establishing that there were phone calls does not establish that these calls violated the WVCCP that entitle Plaintiff to damages, and Plaintiff has failed in carrying her burden on these issues.

D. **THE NUMEROUS CALLS MADE AFTER THE COMPLAINT WAS FILED WERE NOT MADE BY ANY OF THE DEFENDANTS AND CANNOT BE THE SUBJECT OF DAMAGES FOR DEFAULT**

As already stated, a default judgment only constitutes an admission of facts alleged in the Complaint, and the Complaint only alleges twenty-five calls. Plaintiff is therefore limited to damages that she can establish for those twenty-five calls.

Furthermore, the overwhelming majority of the phone calls allegedly made in 2020, according to Plaintiff's chart, were made by persons representing "Debt Free America" and "US Credit Card Help Center." Plaintiff sued neither of these entities, and neither of them entities is

mentioned anywhere in the Second Amended Complaint. Critically, in paragraphs 30-41 of the Second Amended Complaint, Plaintiff sets out all of the persons and entities that Plaintiff contends are alter egos/joint enterprises. Although the MCV Defendants deny that they are alter egos of or joint enterprises with any of these entities, Defendants understand that the default judgment constitutes an admission that they are. However, the list of entities and persons in paragraphs 30-41 of the Second Amended Complaint *do not include Debt Free America or US Credit Card Help, or any of the individuals who made calls on behalf of either of these entities*. Accordingly, the default judgment cannot result in a finding that *any* of the Defendants, including the MCV Defendants, are alter egos of or joint actors with either Debt Free America or US Credit Card Help, and thus Plaintiff is not entitled to any damages as a result of calls by these entities.

Plaintiff's attempt to connect Debt Free America and US Credit Card Help to any of the Defendants, moreover, is tenuous at best. According to her table, the link results solely from comments made in a call on July 16, 2020 (call #42 in the table) from "Daniel," who has stated that he works for Debt Free America. Plaintiff describes this call in the table as follows:

> Call back from "Daniel" on call #41; identifies "Debt Free America"; identifies his banking/quality assurance officer as "American Consumer Rights Organization"; says ACRO will call back from a Nashville (615) area code.

This description is misleading. In the conversation, the transcript of which is attached <u>Exhibit 1</u>, "Dan" describes the services that Debt Free America is offering, which is debt relief, specifically the elimination of $11,000 that Plaintiff owes on a credit card in exchange for a settlement payment to the card issue for 45% of that amount. "Dan" apparently emails Plaintiff a contract, presumably in the name of Debt Free America, that Plaintiff did not provide Defendants in discovery has not been included in Plaintiff's exhibits. Once the program has been explained to Ms. Mey, the conversation goes as follows:

10

Dan Malone:
All right. Perfect, ma' am. So from my side, everything is done. Now I ' m going to have my quality assurance officer on line for you. They will ask you-

Diana Mey: Who?

Dan Malone:

. . . about your understanding of the service. My quality assurance officer, they will ask you about your understanding of the services. They will protect you as a consumer, and then they will go ahead and get you connected to the ACRO. Write down the name.

Diana Mey:
To the what?

Dan Malone:
American Consumer... to ACRO. A- C- R- O. This is the credit monitoring service that will make sure of your credit report by the time the program ends. And they will be the one who will be responsible to eliminate this card. It is ACRO, A- C- R- O.

Diana Mey: AT or AC?

Dan Malone:

AC. American Consumer Rights Organization, ma' am.

Diana Mey:
Okay. **That' s the credit monitoring company**?

Dan Malone:
[ crosstalk 00 : 10 : 32 ] . **That' s right, ma' am**. They are the one who will make sure that by the time the program ends, your credit scores are back to normal, even better than the way they are right now. All right?
Diana Mey: Okay.

Dan Malone:
**And that will be sending you $ 20 monthly bill** that I have explained to you that you are only going to pay out of your pocket, ma' am. Okay

(See Exhibit 1)(emphasis supplied).

This is the only reference in any of the scores of calls made by Debt Free America or US Credit Card Help to any Defendant in this case. It is the entire basis for holding Defendants liable for all calls by Debt Free America and US Credit Card Help Center. The statement is inadmissible hearsay. Furthermore, it only establishes that ACRO is a separate "company" that is going to provide different services than Debt Free America, and is going to separately charge for those services. This call does not remotely establish any of the factors that would allow the Court to conclude that Debt Free America is an alter ego of ACRO or any other Defendant. *See, e.g. Laya v. Erin Homes, Inc.*, 352 S.E.2d 93, 98–99 (W. Va. 1986).[1]

---

[1] The *Lava* court identified the following factors to be considered in determining whether the corporate veil should be pierced.

(1) commingling of funds and other assets of the corporation with those of the individual shareholders;

(2) diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);

(3) failure to maintain the corporate formalities necessary for the issuance of or subscription to the corporation's stock, *348 such as formal approval of the stock issue by the board of directors;

(4) an individual shareholder representing to persons outside the corporation that he or she is personally liable for the debts or other obligations of the corporation;

(5) failure to maintain corporate minutes or adequate corporate records;

(6) identical equitable ownership in two entities;

(7) identity of the directors and officers of two entities who are responsible for supervision and management (a partnership or sole proprietorship and a corporation owned and managed by the same parties);

(8) failure to adequately capitalize a corporation for the reasonable risks of the corporate undertaking;

(9) absence of separately held corporate assets;

(10) use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

(11) sole ownership of all the stock by one individual or members of a single family;

(12) use of the same office or business location by the corporation and its individual shareholder(s);

(13) employment of the same employees or attorney by the corporation and its shareholder(s);

(14) concealment or misrepresentation of the identity of the ownership, management or financial interests in the corporation, and concealment of personal business activities of the shareholders (sole shareholders do not reveal the association with a corporation, which makes loans to them without adequate security);

(15) disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

(16) use of a corporate entity as a conduit to procure labor, services or merchandise for another person or entity;

(17) diversion of corporate assets from the corporation by or to a stockholder or other person or entity to the detriment of **99 creditors, or the manipulation of assets and liabilities between entities to concentrate the assets in one and the liabilities in another;

(18) contracting by the corporation with another person with the intent to avoid the risk of nonperformance by use of the corporate entity; or the use of a corporation as a subterfuge for illegal transactions;

The connection with US Credit Card Help is even more attenuated. In call 89, conducted on February 1, 2021, Plaintiff claims that "Dan from US Credit Card Help Center;. . .transfers Diana directly to Mark with Debt Free America." Thus, apparently Plaintiff maintains that because of this call, US Credit Card Center is an alter ego of Debt Free America, which Plaintiffs claim is an alter ego of ACRO by virtue of call 42.

In summary, there is no allegation in the Second Amended Complaint that either Debt Free America or US Credit Card Help Center are alter egos of any Defendant, and thus the default judgment does not establish as much. Further, Plaintiff's attempt to establish this through affidavit testimony and other exhibits not subject to cross-examination fails. Accordingly, Plaintiff should not be awarded damages for any phone call made by Debt Free America or US Credit Card Help Center.

### E.   The Penalties Under W. Va. Code Ann. §§ 46A-6F-50 and 46A-6F-701 are Per Action, not Per Violation

Plaintiff seeks a statutory penalty under the WVCCPA of $3000 for every phone call that she claims was made in violation of the statute. However, Plaintiff cites no authority for the proposition that the statutory penalties in either W. Va. Code Ann. §§ 46A-6F-50 or 46A-6F-701 are to be awarded per violation, rather per action. The statutes in question do not support Plaintiff's position.

> If a telemarketer violates the provisions of section five hundred one of this article, the consumer has a cause of action to recover actual damages and, in addition, **a right to recover from the violator a penalty in an amount, to be determined by the court, of not less than one hundred dollars nor more than three thousand dollars.** No action brought pursuant to the provisions of this subsection

---

(19) the formation and use of the corporation to assume the existing liabilities of another person or entity.

>may be brought more than two years after the date upon which the violation occurred or the due date of the last scheduled payment of the agreement, whichever is later.

W. Va. Code Ann. § 46A-6F-502 (emphasis added).

>If a telemarketer violates the provisions of section six hundred one of this article, the consumer has a cause of action to recover actual damages and, in addition, **a right to recover from the violator a penalty in an amount, to be determined by the court, of not less than one hundred dollars nor more than three thousand dollars.** No action brought pursuant to the provisions of this subsection may be brought more than two years after the date upon which the violation occurred or the due date of the last scheduled payment of the agreement, whichever is later.

W. Va. Code Ann. § 46A-6F-701(emphasis added).

Neither of these statutory provisions provide that the penalty is per violation. And there is no question but that the West Virginia Legislature knows exactly how to make statutory penalties per violation, as demonstrated by another provision of the WVCCPA setting forth remedies in civil cases for violations of the Act by debt collectors:

>(1) If a creditor or debt collector has violated the provisions of this chapter applying to collection of excess charges, security in sales and leases, disclosure with respect to consumer leases, receipts, statements of account and evidences of payment, limitations on default charges, assignment of earnings, authorizations to confess judgment, illegal, fraudulent or unconscionable conduct, any prohibited debt collection practice, or restrictions on interest in land as security, assignment of earnings to regulated consumer lender, security agreement on household goods for benefit of regulated consumer lender, and renegotiation by regulated consumer lender of a loan discharged in bankruptcy, the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in an action to recover from the person violating this chapter a penalty of $1,000 **per violation**:

W. Va. Code Ann. § 46A-5-101(1)(emphasis added).

Since the Legislature expressly chose not to make the penalties in Sections 501 and 701 of the WVCCPA per violation, as it did with respect to the penalties in the WVCCPA remedy

15

provision for debt collector violations, the clear legislative intent was that the penalties are per action, not per violation.

Sections 501 and 701 of the WVCCPA are also directly contrasted by the remedy provisions of the TCPA, which provide that a person receiving calls in violation of the Act may bring: "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater . . ." 47 U.S.C.A. § 227 (West).

In *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1994), the Sixth Circuit analyzed the remedy provision of the Fair Debt Collection Practices Act (FDCPA) to determine whether the civil penalty in the Act was per action or per violation. Like Sections 501 and 701 of the WVCCPA, the remedy provision in the FDCPA do not expressly provide that the penalty is per violation. The penalty is, in fact, very similar to the penalty in Sections 501 and 701:

> (a) Amount of damages
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 .. . .

15 U.S.C.A. § 1692k (West). The Sixth Circuit held that Congress intended the civil penalty provision in the FDCPA to be per action rather than per violation. The Court stated that under the statutory scheme, "[w]here multiple violations occur, Congress intended the courts to award close to the full $1,000. Conversely, in less egregious situations, the court can award less." *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994).

As the comparison to W. Va. Code Ann. § 46A-5-101 clearly demonstrates, the West Virginia Legislature intended that the penalties in W. Va. Code Ann. §§ 46A-6F-501 & 701 to be per action, not per violation. As with the FDCPA, where there have been multiple violations, the

16

Court can award the full $3,000. Conversely, in less egregious situations, the Court can award less, down to the minimum of $100.

### F. Plaintiff has Made no Argument Regarding why She Contends that She is Entitled to the $3000 Penalty

Assuming *arguendo* that the Court disagrees with Defendants' argument that the statutory penalties in Sections 501 and 701 are per action, the Court still has to make a determination regarding whether the penalties should be $100 per violation or $3,000 per violation, or somewhere in between. Plaintiff simply seeks $3000 per violation, with no explanation, argument, or evidence to support this amount. The MCV Defendants respectfully submit that, if assessed on a per violation basis, the penalty should be $100 per violation for the following reasons: (1) Plaintiff did not suffer any actual damages; (2) there is no evidence of any use of obscene or threatening language or other abusive conduct; (3) the MCV Defendants are being punished for calls that they did not make and had no role in making – there is no mention of any of the MCV Defendants in any phone call; and (4) Plaintiff is seeking an additional $3000 per call under the TCPA for more than half of the calls. Plaintiff can be more than fairly compensated, and Defendants satisfactorily deterred, if a penalty of $100 per violation is assessed.

### G. There are Other Issues with Plaintiff's Damages Claims

Plaintiffs' attempt to recover damages based on charts and spreadsheets has other issues as well. For example, Plaintiff claims that she is entitled to damages for a "pre-recorded call" on May 7, 2018. Defendants have listened to all calls on that date, however, and none appear to have a pre-recorded message. Also, Plaintiff seeks damages for calls on 8/14/19 and 11/6/2020 for calls

made by an automatic dialing system in violation of 47 U.S.C. § 227(b)(1)(8), but Plaintiff's affidavit and the exhibits are silent as to why Plaintiff contends these calls were made with such a system. The MCV Defendants have not had sufficient time to go through each call and evaluate whether they match with Plaintiff's "Table of Violations," but point out again that it is Plaintiff's burden to establish damages.

**G.     Conclusion**

WHEREFORE Defendants Music City Ventures, John Preston Thompson, and Steve Huffman respectfully request that this Honorable Court deny Plaintiff's claims.

> Defendants Music City Ventures,
> John Preston Thompson and Steve Huffman,
>  by counsel,
>
>
> /s/ Paul J. Harris
> Paul J. Harris
> W.Va. Bar # 4673
> 32 Fifteenth Street
> Wheeling, WV 26003
>  304.232.5300

### IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DIANA MEY,**

    **Plaintiff,**

**v.**

**CASTLE LAW GROUP, PC,**
A Tennessee Corporation;
**JUDSON PHILLIPS, ESQ.,**

                                               **Civil Action No. 5:19-CV-185**

An individual;
**CASTLE VENTURE GROUP, LLC,**
A Tennessee Limited Liability Company
**CASTLE EQUITY GROUP, INC.,**
A Tennessee Corporation;
**CASTLE PARTNERS, INC.,**
A Tennessee Corporation;
**CASTLE MARKETING GROUP, LLC,**
A Tennessee Limited Liability Company;
**TRISTAR CONSUMER GROUP,**
A Tennessee Corporation;
**MUSIC CITY VENTURES, INC.,**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW,**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW ORGANIZATION;**
A Tennessee Corporation;
**AMERICAN CONSUMER RIGHTS ORGANIZATION;**
A Tennessee Corporation;
**ADVOCUS LEGAL, INC;**
A Tennessee Corporation;
**TRISTAR CONSUMER LAW FOUNDATION,**
A Tennessee Corporation;
**CAPITAL COMPLIANCE GROUP, CO.,**
A Tennessee Corporation;
**CAPITAL COMPLIANCE GROUP, INC.,**
A Tennessee Corporation;
**CAPITAL RECOVERY LAW, PC,**
A Tennessee Corporation;
**ADVOCUS LEGAL ORGANIZATION,**
A Tennessee Corporation;
**US CONSUMER ADVOCATES,**
A Tennessee Corporation;
**THACKER AND ASSOCIATES INTERNATIONAL, LLC,**

**A Foreign Limited Liability Company;**
**BRUYETTE AND ASSOCIATES, LLC,**
**A Florida Corporation;**
**SEAN AUSTIN, an individual;**
**WILLIAM MICHAEL KEEVER, an individual;**
**ASHLEY R. KEEVER, an individual;**
**STEVE HUFFMAN, an individual;**
**JOHN PRESTON THOMPSON, an individual;**
**And JOHN DOES 1-10, corporate entities and individuals presently unknown,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify this *Defendants Music City Ventures, Inc., John Preston Thompson And Steve Huffman's Response To Plaintiff's Motion For Entry Of Default Judgment On The Record* was filed via the Court's electronic CM/ECF filing system this ___ day of May, 2022, which will then send notification of such filing to the following:

    John W. Barrett, Esq.
    Jonathan R. Marshall, Esq.
    Sharon F. Iskra, Esq.
    Bailey & Glasser, LLP
    209 Capitol Street
    Charleston, WV 25301

    /s/ Paul J. Harris
    Paul J. Harris