IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

DIANA MEY,

    Plaintiff,

  v.                CIVIL ACTION NO. 5:19-CV-185
                     Judge Bailey

**CASTLE LAW GROUP, PC**, a
Tennessee Corporation, **JUDSON
PHILLIPS,** Esq., an individual,
**CASTLE VENTURE GROUP, LLC,**
a Tennessee limited liability company,
**CASTLE EQUITY GROUP,
INC.**, a Tennessee Corporation,
**CASTLE PARTNERS INC.**, a
Tennessee Corporation,
**TRISTAR CONSUMER GROUP,** a
Tennessee Corporation, **MUSIC
CITY VENTURES, INC.,** a
Tennessee Corporation,
**CAPITAL COMPLIANCE GROUP, CO.,**
a Tennessee Corporation, **ADVOCUS
LEGAL ORGANIZATION,** a Tennessee
Corporation, **US CONSUMER
ADVOCATES,** a Tennessee Corporation,
**THACKER AND ASSOCIATES
INTERNATIONAL, LLC,** a foreign
limited liability company, **BRUYETTE
AND ASSOCIATES, LLC**, a Florida
Corporation, **WILLIAM MICHAEL
KEEVER,** an individual, **ASHLEY R.
KEEVER,** an individual, **STEVE
HUFFMAN,** an individual, **JOHN
PRESTON THOMPSON,** an individual, and
**JOHN DOES 1-10**, corporate entities
and individuals presently unknown**,**

    Defendants.

1

## ORDER DENYING MOTION OF MUSIC CITY VENTURES, INC., STEVE HUFFMAN, AND PRESTON THOMPSON PURSUANT TO RULE 59(e) TO ALTER OR AMEND THE COURT'S JULY 5 JUDGMENT AND THE COURT'S JANUARY 4, 2022 AND APRIL 4, 2022 ORDERS

Pending before this Court is the Motion of Music City Ventures, Inc., Steve Huffman, and Preston Thompson Pursuant to Rule 59(e) to Alter or Amend the Court's July 5 Judgment and the Court's January 4, 2022 and April 4, 2022 Orders [Doc. 277] and accompanying Memorandum in Support [Doc. 278]. Plaintiff filed a Response in Opposition [Doc. 284] on August 16, 2022. Moving defendants did not file a Reply. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Motion will be denied.

## BACKGROUND

Defendants Music City Ventures, Inc., Steve Huffman, and Preston Thompson ("moving defendants") ask this Court to set aside its January 4, 2022, April 4, 2022, and July 5, 2022, Orders. See [Doc. 277]. Each of these Orders stemmed from ongoing discovery issues during the pendency of this litigation, and this Court will recount a brief overview of the litigation prior to addressing the pending Motion.

In discovery, plaintiff sought to explore defendants' interrelationships in an attempt to prove alter ego and joint venture claims, as well as her contention that piercing the corporate veil was an appropriate course of action in the suit. Plaintiff served two sets of discovery upon moving defendants dated July 22, 2021, and September 1, 2021. See [Docs. 143 & 153]. Within her July 2021 discovery, plaintiff requested "all documents associated with the incorporation or creation of any other entity in which you and one or more of the co-defendants named herein both have (or have had) interest or ownership"; "all annual tax returns

associated with any entity in which you share (or have shared) interest with one or more of the defendants named herein"; and related tax documents. [Doc. 169 at 9, 14–15]. The September discovery sought, among other items, all documents reflecting defendants interests in any entities named in the suit or in which another defendant also shared an interest. See [Doc. 171 at 9]. Plaintiff also requested that defendants identify other lawsuits in which they/their entities had been involved. [Id. at 15]. Plaintiff also sought relevant banking information from defendants as well as "all documents sent to or received from the FTC, FCC, any state attorney general or other government entity against you or any entity in which you had interest, affiliation, ownership, or officer status." [Id. at 11]. Defendants did not answer forthrightly, but concealed many lawsuits, investigations, and other discoverable material including financial and corporate records. See [Docs. 168, 169, 170 & 171].

These discovery disputes were referred to United States Magistrate Judge James P. Mazzone, who held oral argument on November 2, 2021. [Doc. 181]. At a subsequent status conference, plaintiff identified multiple items which defendants had withheld, some of which should have been produced in response to the July 2022 discovery, and other responsive to the second discovery set. Hearing these, as well as the impact the withholdings had on plaintiff's case preparation, this Court vacated its scheduling order, withdrew its referral to Magistrate Judge Mazzone as to the sanctions issue only, and directed plaintiff to file the items she had described in the form of supplemental information to the pending discovery motions. [Doc. 192].

Even as discovery was withheld, defendants moved for summary judgment, arguing that plaintiff "ha[d] no evidence tying any of the defendants named in [their] motion" to her

3

claims. See [Doc. 175 at 1, 8 & 9]. In response, plaintiff filed Rule 56(d) briefing–which, again, highlighted to this Court that defendants were obstructing discovery.

Plaintiff filed supplemental authorities as directed on November 17, 2021, which discussed specifically as to moving defendants several undisclosed prior lawsuits. See [Doc. 194]. Moreover, the supplemental authorities further indicated that moving defendants had not disclosed their implication in a West Virginia Attorney General investigation, despite the fact that the West Virginia Attorney General had directed subpoenas and discovery to defendant Music City Ventures, Inc. [Doc. 194 at 7].

Notably, defendants never filed any response to the supplemental authorities.

On November 18, 2021, Magistrate Judge Mazzone ruled on plaintiffs' Motions to Compel. [Doc. 195]. As reflected in the Order, Judge Mazzone made both general and specific rulings, including:

> Defendants are ORDERED to REVISIT their searches for documents in response to all Requests for Production implicated by Plaintiff's Motions. Defendants are ORDERED to immediately provide to Plaintiff any responsive documents which they locate. The Court will further ORDER that each of the Defendants implicated by Plaintiff's currently pending Motions [169 and 170] SHALL separately provide to Plaintiff an AFFIDAVIT describing the efforts made to locate all of the requested documents at issue, including dates, times, and locations of the searches, as well as all persons involved in the search and the results of same.

[Id. at 7].

In response to Magistrate Judge Mazzone's Order, moving defendants filed their verified supplemental discovery, representing anew that as of December 8, 2021, they had disclosed all of their business relationships and co-ownerships. Defendants Huffman and Thompson, individually and on behalf of defendant Music City Ventures, Inc., both swore that they believed "all responsive documents are now being produced." [Docs. 198, 200, 201].

In consideration of the foregoing, this Court deemed plaintiff's request for sanctions to be well-grounded, and ordered that moving defendants' defenses and pleadings should be stricken as a result of these discovery abuses. See [Doc. 202].

Meanwhile, after analyzing the December 8 supplementation, plaintiff's counsel apparently discovered, independently, fifteen undisclosed entities–many of which had formed while this litigation was in progress–along with additional evidence connecting them to others. See [Doc. 238]. This led plaintiff to renew her motion for sanctions on February 21, 2022. [Doc. 238].

After consideration of responsive briefing, this Court determined sanctions were appropriate and granted default judgment by Order of April 4, 2022. [Doc. 251]. Upon well-supported motions by plaintiff that this Court could calculate the penalties due without a jury trial, this Court directed and considered full briefing on the same. See [Docs. 262, 265, 266, 268, 269, 270 & 271]. Based on briefing, this Court quantified a judgment in the amount of $828,801.36 in its Order of July 5, 2022, therein allowing plaintiff twenty-one (21) days to petition for attorney's fees. See [Doc. 272].

It is from these Orders that moving defendants seek reconsideration.

## **LEGAL STANDARD**

A district court may amend a judgment under Rule 59(e), inter alia, to "prevent manifest injustice." **Hutchinson v. Stanton**, 994 F.2d 1076, 1081 (4th Cir. 2002). Although the plain language of Rule 59(e) does not provide a particular standard by which a district court should evaluate a motion to alter or amend judgment, the Fourth Circuit has clarified: "Our case law makes clear that Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." **Zinkland v. Brown**, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotations omitted); see **Ingle ex rel. Estate of Ingle v. Yelton**, 439 F.3d 191, 197 (4th Cir. 2006); **U.S. ex rel. Becker v. Westinghouse Savannah River Co.**, 305 F.3d 284, 290 (4th Cir. 2002); **E.E.O.C. v. Lockheed Martin Corp., Aero & Naval Sys.**, 116 F.3d 110, 112 (4th Cir. 1997).

One purpose of Rule 59(e) is to "permit [ ] a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" **Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.**, 148 F.3d 396, 403 (4th Cir. 1998) (quoting **Russell v. Delco Remy Div. of Gen. Motors Corp.**, 51 F.3d 746, 749 (7th Cir. 1995)). But the Fourth Circuit has cautioned that a party may not use a Rule 59(e) motion to "raise arguments which could have been raised prior to the issuance of the judgment," or to "argue a case under a novel legal theory that the party had the ability to address in the first instance." **Id.**; see **Nat'l Ecol. Found. v. Alexander**, 496 F.3d 466, 477 (6th Cir. 2007) ("Rule 59(e) motions are 'aimed at reconsideration, not initial consideration.'") (citation omitted). "A motion under Rule 59(e) is not authorized 'to enable a party to complete

presenting his case after the court has ruled against him.'" *Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (internal quotations omitted). A losing party's "[m]ere disagreement [with a court's ruling] does not support a Rule 59(e) motion." *Hutchinson*, 994 F.2d at 1082. Indeed, "'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co.*, 148 F.3d at 403 (citation omitted).

## DISCUSSION

Based on applicable standards, this Court will deny the Motion for several reasons, moving defendants arguments notwithstanding.

**I.  The Motion is untimely.**

First, moving defendants argue that their Motion is their first opportunity to address the points raised in plaintiff's supplemental authorities filed on November 17, 2021. But moving defendants were never foreclosed from responsive briefing at that juncture; rather, they filed nothing in opposition. Later, while co-defendants Judson Phillips and Capital Compliance filed Rule 60(b) motions objecting to the January 4 Order [Docs. 203–206], moving defendants did not do so.

Rather, moving defendants assert that the January 4 Order "in effect award[ed] Plaintiff a default judgment." However, this Court has already stated that the January 4 Order was not a final judgment. [Doc. 207 at 2]. But even if moving defendants were correct, their time to file their Rule 59 Motion expired months ago:

**Rule 59.  New Trial; Altering or Amending a Judgment**

\*\*\*

7

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment.

Fed. R. Civ. P. 59(e).

As this Court previously noted, a motion to reconsider may be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) or a motion for relief from judgment under Fed. R. Civ. P. 60(b). See [Doc. 207 at 2]. But moving defendants made neither motion with respect to either the January 4 Order or the April 4 Order until August 2, 2022, despite opportunities seized by their co-defendants.

Still, the record shows that contrary to their argument, the moving defendants were already heard because they raised exactly these same arguments in opposition to plaintiff's Motion to Compel. See [Docs. 176 & 178]. Therein, moving defendants argued their discovery responses were complete, urging plaintiff and this Court to believe that "[i]f there was any further affiliation, past or present, it would have been listed in the response," and "herein [d]efendants have provided information they have control over, with the exception of the objectionable documents." [Id.]. The record has demonstrated the falsity of these statements, but even so, moving defendants then filed a Response to Plaintiff's Motion for Entry of Default Judgment on the Record [Doc. 268] in which they again failed to persuade this Court of their position.

## II. The sanctions contained in the January 4, 2022, Order were proper.

Throughout briefing, moving defendants argue this Court's January 4 Order was an order granting default judgment, averring that the full sanction was imposed on that date, and that the sanction was excessive. Even assuming, *arguendo*, these contentions to be true,

8

moving defendants cannot meet the Rule 59(e) standards for relief. This is so because there is no clear error of law in this Court's decision to sanction moving defendants, and no manifest injustice is present.

Plaintiff did not request, and this Court did not impose, default judgment as an initial sanction. Instead, this Court determined that moving defendants had violated Federal Rule 37(a)(4) and (c), which provide "automatic sanctions" that do not require failure to comply with an order issued on a prior motion to compel. See [Doc. 202 at 8]. Based on its inherent power to deter behavior that undermines its ability to achieve the just, orderly, and expeditious disposition of cases, this Court noted its authority to strike pleadings or defenses and punish for contempt, amongst other things. [Id. (citing **Chambers v. NASCO, Inc.**, 501 U.S. 32, 43 (1991))]. This Court also noted that "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders[.]" [Id. (citing **Hinkle v. City of Clarksburg, W.Va.**, 81 F.3d 416, 426 (4th Cir. 1996))].

In accord with these authorities and Fed. R. Civ. P. 37(b)(2)(iii), this Court's initial sanction was to strike moving defendants' pleadings and defenses. See [Doc. 202 at 9]. As stated herein, by the time this Court considered sanctions, this Court and the parties were fully aware of the history of litigation, which had disrupted the docket and necessitated vacation of the scheduling order. This Court also had the benefit of full briefing on plaintiff's two Motions to Compel, full briefing on the Rule 56 motion and plaintiff's Rule 56(d) motion, plaintiff's supplemental authorities, and Magistrate Judge Mazzone's ruling specific to the issues with moving defendants' discovery responses. This information was buttressed by a

9

docket reflecting over five months of delay caused by moving defendants' insistence that their responses to plaintiff's first discovery requests had been complete. Far from confusing or "lumping all Defendants together," this Court was specifically aware of moving defendants' misconduct, and even cited to examples of the same as it pertained to individual failures to disclose due information. See [Doc. 202 at 7–8].

Moving defendants simply misstate the record in their Motion when they argue they were not in violation of any discovery order and that they were sanctioned without warning in January 2022. [Doc. 278 at 15]. Rather, they ignore and apparently discount Magistrate Judge Mazzone's Order directing them to revisit, correct, and/or supplement their searches for documents in response to plaintiff's discovery requests.

Moreover, nothing requires this Court to issue a warning before imposing sanctions. When a party willfully and flagrantly disregards a court order to make discovery, the party is already put on notice by the terms of Rule 37. **Lolatchy v. Arthur Murray, Inc.**, 816 F.2d 951, 956 (4th Cir. 1987) (Wilkinson, J., dissenting) ("To reverse the district court for failing to remind the defendant about the possibility of default would be worse than redundant; it would give the defendants yet another opportunity for delay."). Moreover, here, it is beyond dispute that moving defendants had many warnings that specific sanctions were on the horizon: their responsive briefing to plaintiff's Motions to Compel disputed whether sanctions were warranted [Docs. 176 & 178]; their counsel heard in open court on November 10, 2021, that plaintiff sought (and this Court was contemplating) striking their defenses as a sanction [Doc. 202 at 5]; a corresponding Order of Hearing was docketed withdrawing the issue of sanctions from Magistrate Judge Mazzone [Doc. 192]; defendants filed responsive briefing

10

to plaintiff's Rule 56(d) motion in which plaintiff asks for defendants' defenses be stricken as a sanction [Docs. 188 & 189]; and defendants were served with plaintiff's supplemental authorities in which plaintiff sought sanctions. [Doc. 194]. It is purely inconceivable based on the procedural posture of this case that moving defendants lacked notice that sanctions were likely if they continued to demonstrate abuse of the discovery process.

Courts have broadly interpreted their authority under Rule 37(b)(2) to permit sanctions for failure to obey a wide variety of orders intended to permit discovery. See **Hathcock v. Navistar Int'l Transp. Co.**, 53 F.3d 36, 40 (4th Cir. 1995) (holding that a trial court had authority to impose default judgment as a sanction for violating a Rule 16 scheduling order, stating "we agree with the basic premise that a default sanction can, under certain circumstances, be an appropriate response to a violation of a Rule 16 order. After all, the express terms of Rule 37 permit a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery").

Alternatively, moving defendants argue that the January 4 sanctions were too harsh, and that plaintiff suffered no prejudice by discovery delays. A review of the record indicates otherwise: before the January 4 Order, plaintiff filed and briefed multiple motions to compel, a Rule 56(d) motion in order to defend an early motion for summary judgment based on information moving defendants knowingly withheld, and motions for sanctions and briefings. This course culminated, ultimately, in the vacation of the scheduling order. Moreover, plaintiff had to conduct her own investigation into the web of entities spread across at least four states to determine defendants connections.  Moving defendants' suggestion that this Court's sanctions represent a clear error of law or manifest injustice is not well taken.

### III. This Court's April 4, 2022, Order properly heightened sanctions against moving defendants.

In deciding to escalate sanctions to a default judgment, this Court recited moving defendants' specific conduct and the relevant evidence concerning the same:

> In her memorandum in support of the instant motion, plaintiff lists newly found evidence of organizations that meet this criteria. Plaintiff lists fifteen organizations she has independently found, nearly all of which have defendants Thompson and Huffman as officers. [Doc. 238 at 5]. As plaintiff points out, several of these were formed while this case was ongoing. [Id.]. In light of this Court's findings in its January 4, Order, the Court finds that the failure to disclose the business entities shown by plaintiff demonstrate a continued pattern by defendants; indeed, the fact that defendants failed to disclose organizations that were founded during this case make it implausible that their omission was due to mistake or inadvertence. Accordingly, a finding of bad faith is warranted.

[Doc. 251 at 4–5].

This Court continued, stating:

"[T]he need for deterrence of the particular sort of noncompliance" favors default judgment. Throughout the course of this case, defendants have had multiple, repeated opportunities to remedy their conduct and have not done so. Entry of default judgment then, would serve as "an unmistakeable message to them and others that the judicial system will not tolerate repeated misconduct never wholly

remedied in the future. To find otherwise would be to send the opposite message that the court may be pushed, ignored and defied to the outmost limits so long as the noncomplying party has even an inadequate fallback act ready in the wings should the final curtain be falling."

[Doc. 251 at 5–6].

Default judgment was granted by Order of April 4, 2022, instructing that the case would proceed to a jury on the issue of damages alone. [Id. at 9]. At the subsequent pretrial conference, plaintiff moved to convert this to a bench trial, and followed with supplemental authority supporting her position. [Doc. 272 at 2]. This Court granted plaintiff's request and noted that "Indeed, had the plaintiff filed an affidavit showing the number of calls with the clerk, judgment could have been entered without need of a hearing." [Id.]. Plaintiff submitted her affidavit and penalty calculations on April 28, 2022, and moving defendants responded. *See* [Docs. 265 & 268]. This Court's subsequent Order Granting Judgment dated July 5, 2022, then quantified the penalties due to plaintiff. [Doc. 272].

## IV.  This Court's July 5, 2022, Order properly quantified penalties.

Moving defendants fail to articulate why this Court's July 5 Order should be reconsidered. First, moving defendants cite no clear error of law in the ruling. While they advance a series of factual arguments, none demonstrate that this Court abused its discretion on any substantive aspect of the Order, or even in issuing sanctions. Moving defendants cite to ***Hathcock v. Navistar Intern. Transp. Corp.***, 53 F.3d 36 (4th Cir. 1995) and ***Choice Hotels Int'l v. Goodwin & Boone***, 11 F.3d 469, 473 (4th Cir. 1993), but this Court finds its decisions to be correct under those precedents. Moving defendants were forewarned on

13

multiple occasions that sanctions were contemplated; had from November 2021 through January 4, 2022, to avoid them by correcting discovery responses as ordered by Magistrate Judge Mazzone; and still, their behavior remained undeterred by the lesser and preliminary sanctions issued in the January 4, 2022, Order. While moving defendants continue to urge this Court to believe that plaintiff suffered no prejudice from their deceptions, this Court has already rejected this argument twice.

In a last ditch effort, moving defendants reassert arguments about the strength of evidence supporting plaintiff's underlying joint enterprise and alter ego theories. As before, moving defendants castigate plaintiff for lacking the very evidence they withheld, which only notes their discovery misconduct again. By virtue of the January 4 Order, these defenses and pleadings were stricken, and moving defendants were deemed alter egos and joint enterprises collectively with the other defendants. As such, this argument fails to lead this Court to reconsider.

## CONCLUSION

For the reasons contained herein, the Motion of Music City Ventures, Inc., Steve Huffman, and Preston Thompson Pursuant to Rule 59(e) to Alter or Amend the Court's July 5 Judgment and the Court's January 4, 2022 and April 4, 2022 Orders [**Doc. 277**] is **DENIED**.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to all counsel on record.

DATED: September 9, 2022.

_____
**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**