**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

────────────

**No. 22-1820**

────────────

DIANA MEY,

                    Plaintiff - Appellee,

        v.

JUDSON PHILLIPS, Esq., an individual; CAPITAL COMPLIANCE GROUP,
CO., A Tennessee Corporation,

                    Defendants - Appellants,

       and

CASTLE LAW GROUP, PC, A Tennessee Corporation; CASTLE VENTURE
GROUP, LLC, A Tennessee limited liability company; CASTLE EQUITY
GROUP, INC., A Tennessee corporation; CASTLE PARTNERS INC., A
Tennessee corporation; TRISTAR CONSUMER GROUP, A Tennessee
Corporation; MUSIC CITY VENTURES, INC., A Tennessee Corporation;
ADVOCUS LEGAL ORGANIZATION, A Tennessee Corporation; US
CONSUMER ADVOCATES, A Tennessee Corporation; BRUYETTE AND
ASSOCIATES, LLC, a Florida Corporation; THACKER AND ASSOCIATES
INTERNATIONAL, LLC, a foreign limited liability company; WILLIAM
MICHAEL KEEVER, an individual; ASHLEY KEEVER, an individual; STEVE
HUFFMAN; JOHN PRESTON THOMPSON, an individual; JOHN DOES 1-10,
corporate entities and individuals presently unknown,

                    Defendants.

────────────

**No. 22-1859**

────────────

DIANA MEY,

      Plaintiff - Appellee,

   v.

MUSIC CITY VENTURES, INC., A Tennessee Corporation; STEVE HUFFMAN; JOHN PRESTON THOMPSON, an individual,

      Defendants - Appellants,

   and

JUDSON PHILLIPS, Esq., an individual; CAPITAL COMPLIANCE GROUP, CO., A Tennessee Corporation; CASTLE LAW GROUP, PC, A Tennessee Corporation; CASTLE VENTURE GROUP, LLC, A Tennessee limited liability company; CASTLE EQUITY GROUP, INC., A Tennessee corporation; CASTLE PARTNERS INC., A Tennessee corporation; TRISTAR CONSUMER GROUP, A Tennessee Corporation; ADVOCUS LEGAL ORGANIZATION, A Tennessee Corporation; US CONSUMER ADVOCATES, A Tennessee Corporation; BRUYETTE AND ASSOCIATES, LLC, a Florida Corporation; THACKER AND ASSOCIATES INTERNATIONAL, LLC, a foreign limited liability company; WILLIAM MICHAEL KEEVER, an individual; ASHLEY KEEVER, an individual; JOHN DOES 1-10, corporate entities and individuals presently unknown,

      Defendants.

------------------

Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge. (5:19-cv-00185-JPB-JPM)

------------------

Argued:  April 13, 2023               Decided:  June 23, 2023

------------------

Before GREGORY, Chief Judge, and DIAZ and THACKER, Circuit Judges.

------------------

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Chief Judge Gregory and Judge Diaz joined.

------------------

2

**ARGUED:** Paul J. Harris, HARRIS LAW OFFICES, Wheeling, West Virginia, for Appellants.  Benjamin James Hogan, BAILEY & GLASSER, LLP, Morgantown, West Virginia, for Appellee.  **ON BRIEF:** Sharon F. Iskra, Jonathan R. Marshall, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellee.

———————————

THACKER, Circuit Judge:

After receiving a flood of telemarketing phone calls concerning debt relief through lower interest rates on credit cards, Diana Mey ("Appellee") brought suit pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-6F-101 *et seq.*, against several defendants, including Appellants Judson Phillips ("Phillips"); Steve Huffman ("Huffman"); John Preston Thompson ("Thompson"); Capital Compliance Group, Co. ("Capital"); and Music City Ventures, Inc. ("Music City"); and non-appealing defendants Tristar Consumer Group ("Tristar"); Thacker and Associates International, LLC ("Thacker & Associates"); Castle Law Group, PC ("Castle Law"); and Bruyette and Associates, LLC ("Bruyette"). Throughout the course of the litigation, Appellants failed to respond fulsomely and accurately to discovery requests and to comply with court orders pertaining to those requests. As a sanction for their repeated discovery violations, the district court entered default judgment against Appellants.

For the reasons set forth below, we conclude that the district court did not abuse its discretion by finding that Appellants acted in bad faith and entering default judgment against them. Therefore, we affirm.

I.

A.

<u>Appellee Files Suit and Serves Discovery</u>

On January 24, 2019, Appellee filed suit in state court against Phillips, Castle Law, and Bruyette for allegedly acting in concert to run an illegal telemarketing and consumer

exploitation scheme in violation of the TCPA and the WVCCPA.  On May 28, 2019, Phillips[1] filed a notice of removal, citing federal question jurisdiction pursuant to 28 U.S.C. § 1331.  On August 5, 2019, the district court entered an initial scheduling order requiring Appellee to make her expert disclosure by March 6, 2020, and all discovery in this case to be complete by May 1, 2020.

In a bid to determine whether there were other corporate entities that should have been involved in this matter, Appellee served Phillips with Appellee's first set of written discovery on September 26, 2019.  Appellee's initial discovery requests focused on whether Phillips, the alleged "principal of Castle Law," J.A. 10,[2] had a relationship with any other corporate entities that should be named defendants.  Specifically, the discovery requests asked for Phillips' interest in any corporate entities from 2009 to present, any past or present business relationships between such entities, and the identities of others who may have discoverable information about matters alleged.

On October 28, 2019, a month after Appellee's initial discovery requests were served, Phillips emailed Appellee's counsel and indicated that he had just received the discovery that day.  Phillips requested an extension, and Appellee's counsel granted 15 additional days.  Appellee received Phillips' initial responses on November 18, 2019. However, most of the responses were inadequate, and Appellee's counsel outlined the

---

[1] Phillips was a practicing attorney initially representing himself in this matter before being disbarred and retaining other counsel in December 2019.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

deficiencies in both a letter to Phillips dated November 19, 2019, and during a telephonic meeting with Phillips on December 2, 2019.

Phillips agreed to expand his answers to several of Appellee's initial requests, and the parties agreed he could supplement his responses to Interrogatories by December 6, 2019, and responses to Requests for Production by January 2, 2020.  The parties also agreed that, if necessary, Appellee would file a motion to compel within 10 days of receipt of each of these separate supplements.

B.

Appellee's First Motion to Compel Discovery and Request for Sanctions

After several attempts to secure adequate discovery responses from Phillips, Appellee filed a motion to compel responses to its First Set of Interrogatories on December 16, 2019.  Despite supplementing his answers, Phillips' discovery responses remained incomplete because Phillips answered only in the present tense; failed to provide information about his personal relationship to several of the listed entities and their interrelationships; and failed to disclose organizations in which he had an interest, officer status, or affiliation.  Phillips also failed to provide information that was due with his Federal Rule of Civil Procedure 26[3] disclosures in July 2019 even without a discovery

---

[3] "[A] party must, without awaiting a discovery request, provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(i).

request.  Specifically, Phillips failed to identify persons with discoverable information; identify those who worked at the listed organizations, their job descriptions, and dates of employment; and provide a summary of the knowledge each is believed to possess.

The district court referred this motion to compel and all other non-dispositive pretrial motions, excluding motions in limine, to the magistrate judge.  The magistrate judge then directed Phillips to respond to the motion to compel, if desired, on or before January 6, 2020.  On January 2, 2020, Phillips filed supplemental responses to Appellee's Requests for Production of Documents.  On January 10, 2020, Phillips filed supplemental responses to Appellee's First Set of Interrogatories.  And on January 10, 2020, four days beyond the time set by the district court, Phillips filed his Response to Appellee's motion to compel.

On January 16, 2020, after hearing arguments from both parties, the magistrate judge granted Appellee's motion, concluding that Phillips' answers to several of Appellee's interrogatories were insufficient.  Although the magistrate judge agreed that Phillips had not fully answered discovery and compelled supplemental responses, he refrained from issuing sanctions, noting that "the issue of sanctions can be re-raised in the future if [Appellee] deems it appropriate."  J.A. 396.  On February 10, 2020, the district court extended the deadline for discovery from May 1, 2020, to June 1, 2020.

C.

Appellee Amends Her Complaint

Appellee continued to receive telemarketing calls "throughout 2018 and during January 2019" and even on "February 6, 2020, over a year after [filing] the initial

[c]omplaint." J.A. 417. As Appellee continued to independently gather more information about Appellants, she learned that Phillips and the other defendants named in the initial complaint had formed a vast and complex web of corporate entities. Coupled with the continued telephone calls, the new information prompted Appellee to file her First Amended Complaint and then the operative Second Amended Complaint to add allegations of additional calls and name new defendants, including the rest of the Appellants.

In the Second Amended Complaint, Appellee alleges Appellants and their related entities -- "a web of 25 parties in all, exclusive of the Doe Defendants," Appellee's Resp. Br. at 7 -- acted in a joint enterprise and as alter egos of one another, such that piercing the corporate veil was necessary to achieve justice. For the next eight months, Appellee attempted to serve the Second Amended Complaint on the 25 additional defendants with limited success. These additional defendants evaded Appellee's professional process servers by means of fraudulent address listings -- including UPS stores, virtual offices, and altogether wrong addresses -- and by dissolving or re-designating their corporate forums after service attempts were made.

Appellants filed six motions to dismiss the Second Amended Complaint for lack of personal jurisdiction and failure to state a claim, all of which the district court denied. In their answer to the Second Amended Complaint, Appellants lodged several counterclaims for fraud, which the district court dismissed as baseless.

On May 29, 2020, Appellee filed a motion to continue discovery and trial in light of the then-recent addition of several new defendants and an agreed upon mediation with Appellants scheduled for June 12, 2020. The district court granted Appellee's motion on

June 1, 2020, and entered an order relieving the parties from the then-current scheduling order. The district court noted that if the matter was not resolved in mediation, "the [c]ourt will instruct the parties as to rescheduling the trial and all appurtenant deadlines." J.A. 572.

On June 18, 2020, the mediator wrote to the district court to indicate the matter had not been resolved. On July 20, 2020, Appellee moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a)[4] against several defendants, including Tristar. On September 1, 2020, the district court directed the clerk to enter default against Tristar for failure to file a response and gave Appellee 60 additional days to serve the other named defendants. On November 3, 2020, after several expired service extensions, Appellee voluntarily dismissed the non-served defendants without prejudice in order to proceed against Appellants, whom she successfully served.

On April 28, 2021, the district court directed the parties to submit a scheduling order checklist within 14 days, which the parties jointly filed on May 11, 2021. On May 12, 2021, the district court reinstated an amended scheduling order requiring Appellee's expert disclosures to be submitted by July 15, 2021, and discovery to be completed by October 1, 2021. On July 13, 2021, the district court extended the deadline for Appellee's expert disclosures to July 29, 2021.

---

[4] "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

D.

<u>Appellee's Second and Third Motions to Compel and Appellants' Motion for Summary Judgment</u>

On July 22, 2021, Appellee served additional discovery requests on Appellants Huffman, Thompson, Capital, and Music City.  On July 26, 2021, the parties filed a joint stipulation in which they agreed Appellee would have 14 days beyond the receipt of Appellants' responses to her second set of written discovery in which to provide her expert report.

When Appellants' August 20, 2021 responses to Appellee's written discovery requests proved unsatisfactory, Appellee's counsel sharpened and refined her inquiries through another set of discovery[5] filed on September 1, 2021.  These requests sought information related to Appellants' interrelationships; an explanation of the relationships, successorships, or histories among Appellants; identification of all lawsuits against Appellants or entities in which they had officer status or ownership; and identification of all persons who shared an interest, ownership or officer/managerial status with any Appellant(s) or their entities.  The discovery also sought business records such as annual reports, business license renewals and other regulatory filings of all entities shared among Appellants, past and present, as well as documents associated with the creation of and common ownership in any of their shared entities, past or present.  Appellee also requested

---

[5] On September 1, 2021, Appellee served her Second Set of Requests for Production and Interrogatories on Appellants Huffman, Thompson, Capital and Music City, and her Third Set of Interrogatories and Requests for Production on Appellant Phillips.

copies of all documents sent to or received from the Federal Trade Commission, Federal Communications Commission, any State Attorney General, or any other government entity concerning Appellants or any entity in which any Appellant had an interest, affiliation, ownership, or officer status.

However, Appellants continued to commit the same abuses of discovery for which the court had previously admonished Phillips. For example, Appellants continued to answer discovery requests only in the present tense, depriving Appellee of discovery about the relevant time period. Each Appellant also excluded production of electronic documents, including online secretary of state records, and initially refused to produce tax and financial records, denying having any transaction-related documents (reflecting ownership interest, merger, dissolution, transfer of assets, etc.) for any entities.

More specifically, Huffman did not produce copies of documents reflecting interest, affiliation, officer status or ownership in any named entity or entity shared with any other named defendant. Huffman's initial answers did not disclose that he and Thompson were co-owners of Nashville Tennessee Ventures, Inc. ("Nashville Ventures") or that Music City was a related entity. Huffman also failed to disclose the existence of 15 shared entities Appellee uncovered independently. Rather, Huffman's discovery responses stated, "Mr. Huffman is only affiliated with Defendant Music City." J.A. 1127. Some of these entities were active prior to discovery, while others were created during the discovery period of this case. Huffman also failed to disclose any litigation or investigations into his entities.

Likewise, Thompson engaged in nearly identical conduct, failing to disclose co-ownership with Huffman of Nashville Ventures and Music City; failing to produce

11

documents reflecting interest, affiliation, officer status or ownership in any named entity or entity shared with other defendants; and failing to disclose relevant lawsuits.  By the close of discovery on October 1, 2021 -- two years after Appellee's initial discovery requests -- Appellants collectively had produced only 57 documents, most of which were duplicates of filings publicly available on the Tennessee Secretary of State's website.

On October 18, 2021, Appellee filed an omnibus motion to compel that contained (1) a motion to compel responses to Appellee's Second Set of Requests for Production and Interrogatories (Appellee's second motion to compel); and (2) a motion to compel responses to Appellee's Third Set of Requests for Production and Interrogatories (Appellee's third motion to compel).  Appellee also requested a status conference, arguing that Appellants' orchestrated delay impacted her expert disclosure and discovery deadlines. For instance, Appellee's counsel intended to hire an expert to testify to the connection between Appellants, but Appellants withheld nearly 2,500 pages of bank records, refused to sign releases permitting Appellee to secure tax documents independently, and misrepresented the status of several business entities and relationships, thereby sandbagging the production of thousands of documents, emails, and corporate and financial records until after the deadline for Appellee's expert disclosures.

That same day, Appellants moved for summary judgment, asserting that Appellee did not have sufficient evidence to prevail on her claims against them.  In response,

Appellee filed a motion and affidavit pursuant to Federal Rule of Civil Procedure 56(d),[6] explaining that she had been deprived in discovery of the information she would need to rebut summary judgment.

On November 10, 2021, the district court held a status conference during which Appellee's counsel detailed Appellants' alleged misconduct and provided examples of the responsive materials that Appellants had withheld in discovery that Appellee only learned as a result of her independent research. For example, Appellee claimed that Appellants concealed a "State of Oregon Cease and Desist Order,"[7] J.A. 1606, directed to Phillips and several other Appellants; numerous lawsuits naming several of the same Appellants as defendants and involving the TCPA, state consumer protection statutes, and deceptive business practices; and an excerpt from Phillips' State of Tennessee disbarment file that notes an investigation lodged by the West Virginia Attorney General into Phillips, Music City, and Tristar.

Appellee again asked the court to sanction Appellants for their pattern of deception and disruption of the scheduling order. That same day, the district court vacated the

---

[6] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

[7] In response to Appellee's Request for Production of Documents No. 8 seeking "all documents sent to or received from . . . any State Attorney General or other government entity against you or any entity in which you had interest, affiliation, ownership, or officer status," Appellants answered that "After a diligent search, there are no documents responsive to this request." J.A. 1297.

scheduling order, withdrew the issue of sanctions from the magistrate judge, and directed Appellee to file the materials she referenced in the status hearing and any other supplemental information within seven days.

On November 17, 2021, Appellee filed the supplemental information requested by the district court.  Appellee outlined the many lawsuits and investigations that Appellants concealed, including those alleging that they operated in joint enterprise and in civil conspiracies, TCPA complaints, and investigations by the West Virginia Attorney General and similar agencies.  Appellee also suggested an array of sanctions to the court, including striking of defenses, an adverse inference against Appellants, an award of attorney's fees and costs, and monetary sanctions.

On November 18, 2021, the magistrate judge issued his order granting in part Appellee's second and third motions to compel and noting, "the [c]ourt is troubled by the evidence regarding the pattern and practice of [Appellants'] behavior."  J.A. 1921.  The magistrate judge ordered each Appellant to not only revisit, supplement and/or correct their production of documents, but also to submit an affidavit describing the efforts made to do so.

On December 8, 2021, Appellants supplemented their discovery responses, but these "supplements" were largely the same materials Appellee had already uncovered on her own.  For example, Huffman and Thompson disclosed their 50/50 ownership in Nashville Ventures, an entity related to Music City, even though Appellee had already uncovered this fact and raised it in her motion to compel.

E.

<u>The District Court Sanctions Appellants</u>

On January 4, 2022, the district court entered its order imposing sanctions against Appellants, striking their defenses for, among other conduct, their "pattern of concealing discoverable material" and "fail[ure] to obey [the court's] order." J.A. 1946. In its sanctions order, the district court found that Appellants "did not answer forthrightly, but concealed many lawsuits, investigations, and other discoverable material including financial and corporate records." *Id.* at 1940. Among the prior lawsuits Appellants failed to disclose were the following:

- *Abramson v. Am. Consumer Rts. Org.*, No. AR-19-001446 (Ct. Corn. P1. Allegheny County, Pa. 2019), in which the plaintiff alleged violations of the TCPA and Pennsylvania's Unfair Trade Practices and Consumer Protection Law arising from phone calls placed in December 2018 through August 2019. The plaintiff alleged that Phillips directly and personally managed all aspects of the corporate defendants, and the defendants acknowledged that Music City operated under the name Tristar. Phillips, Music City, and Tristar were all named defendants in this matter.

- *Abramson v. Thacker & Assocs. Int'l, LLC*, No. AR-17-001419 (Ct. Corn. P1. Allegheny County, Pa 2017), in which the plaintiff brought TCPA claims against Thacker & Associates, a corporation owned by Appellants Huffman and Thompson.

15

The district court further noted that, in "ruling upon a prior motion to compel in this case, [the magistrate judge] noted many of the same evasive tactics [Appellants] continue to attempt." J.A. 1940.  In support of that factual finding, the district court outlined several examples of Appellants' discovery abuses, including (1) failing to disclose prior and ongoing litigation; (2) refusing to disclose affiliations with other business entities (including, for example, that "Phillips was a control person of those business entities," *id.* at 1944); (3) "conceal[ing] the existence of . . . investigation[s]" into those entities, *id.*; and (4) "falsely represent[ing]" Appellants' relationship with those entities, *id.* at 1945.  The district court also found "that the requested discovery [was] essential to [Appellee]'s opposition to summary judgment." *Id.* at 1949.

Accordingly, the district court determined that Appellants' "pattern of concealing discoverable material," J.A. 1946, violated the court's scheduling order and Federal Rules of Civil Procedure 37(a)(4) and (c),[8] which provide "automatic sanctions," *id.* at 1945 (internal quotation marks omitted).   Consequently, in accord with Federal Rule 37(b)(2)(iii), the district court employed its "inherent power to impose sanctions for . . . bad-faith conduct" by striking Appellants' defenses.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

---

[8] Federal Rule 37(c) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

16

Subsequently, "[w]ith the [Appellants'] defenses stricken," the district court denied Appellants' motion for summary judgment as moot and noted that the "only issue remaining in this case [was] . . . a trial on [Appellee's] damages." J.A. 1946.

F.

Appellants' Motion for Reconsideration

Phillips and Capital filed a motion for reconsideration, arguing that the district court erred as a matter of law because the sanction was too harsh, the discovery abuses were "inadvertent," and Appellee was not prejudiced. J.A. 2044. The district court rejected these arguments, finding that Appellants' discovery abuses barred Appellee's access to information "essential" to her alter ego claims, and ultimately the merits of her claims, because "the discovery in question sought to establish whether defendant corporations are fraudulently conveying assets among themselves" and whether the Appellants "are behind this vast web of inextricably intertwined corporate entities and scheme to place illegal telemarketing calls." *Id.* at 2045. Therefore, the district court denied the motion to reconsider.

G.

The District Court Enters Default Judgment Against Appellants

Following the district court's order striking Appellants' defenses, Appellee continued her independent research to supplement the limited discovery she had received from Appellants as she prepared for a trial on damages. Pursuant to the magistrate judge's orders and Federal Rule 26(e), Appellants had an ongoing obligation to supplement their discovery responses and submit affidavits attesting to and detailing their search and

17

production efforts.  Appellants facially complied, swearing anew that their supplements were complete, but after independently cross-referencing and researching Secretary of State files in multiple states (including New Mexico, Tennessee, Ohio, and Florida) and paying for retrieval of corporate records and creation documents Appellants swore did not exist, Appellee discovered that Appellants failed to produce 18 documents reflecting an interest in previously concealed entities.  Appellee's counsel also discovered multiple high-dollar transactions among these enterprises, including some implicating Music City.  These transaction documents showed that Appellants had been transferring money between themselves during the course of the litigation (from 2019 to 2021).

Moreover, as discussed above, Appellee's counsel also uncovered that several Appellants had been operating together in 15 additional enterprises, which were never disclosed, and that several of these enterprises were formed during the discovery period of this case.  Appellee's counsel also discovered additional falsehoods by Phillips about the status of his entities.  For example, Phillips had denied any association with the American Consumer Rights Organization ("ACRO"), claiming that although he was the incorporator of ACRO, he had "no other association."  J.A. 345.  Phillips also represented that "Tristar Consumer Law Organization ["TCLO"] is the successor to Tristar Consumer Law," and that Phillips "had no involvement in that organization."  *Id.* at 2235.  However, the Charter and Articles of Amendment retrieved by Appellee's counsel from the Tennessee Secretary of State suggest that TCLO is one in the same with ACRO, with TCLO simply changing its name to ACRO on May 17, 2018.  These records also reflect that Phillips was the organization's corporate officer before that date.

On February 21, 2022, Appellee filed a renewed motion for sanctions, detailing Appellants' continued violations and arguing that Appellants were hiding information the court designated as "essential" to Appellee's claims.  Appellee's renewed motion asked for harsher sanctions, including default judgment and contempt of court pursuant to Federal Rules 37(b)(2) and 37(c).  In response, Appellants argued that the discovery abuses were inconsequential and did not prejudice Appellee since her counsel had managed to discover most of the documents Appellants had failed to disclose.

In considering Appellee's motion for entry of default judgment, the district court weighed the four factors established by this court in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977) and summarized in *Mutual Federal Savings & Loan Ass'n v. Richards & Associates, Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).  Specifically, the district court considered "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions."  J.A. 2498 (quoting *Richards*, 872 F.2d at 92).

On April 4, 2022, the district court granted Appellee's motion and entered default judgment against Appellants.  In doing so, the district court found that (1) Appellants' failure "to disclose organizations that were founded during this case make[s] it implausible that their omission was due to mistake or inadvertence," J.A. 2499, and "a finding of bad faith . . . is easily met," *id.* at 2498; (2) "the amount of prejudice caused to [Appellee] through [Appellants'] noncompliance favors sanctions of default judgment," *id.* at 2499;

(3) the "need for deterrence . . . favors default judgment" because "the judicial system will not tolerate repeated misconduct" and Appellants "had multiple, repeated opportunities to remedy their conduct and" did not do so, *id.*; and (4) Appellants' "conduct in this case, as well as the pattern of conduct in similar cases set forth in [the district court's] January 4 Order, demonstrates that the harsh sanction of default judgment is justified," *id.* at 2500.

In reaching its conclusion, the district court noted that in its "previous order, [it] found that defendants had failed to obey the discovery requirements set forth in the scheduling order and found that sanctions were appropriate." J.A. 2496. The district court further noted that despite that order imposing sanctions, the magistrate judge's orders compelling responses to many of Appellee's discovery requests, and the district court's finding that Appellants engaged in a pattern of concealing discoverable material, Appellants persisted in their misrepresentations and violations of existing court orders in what the district court referred to as a "wider scope of intentional discovery abuse." *Id.* at 2498.

Nevertheless, the district court declined to fine Appellants or hold them in contempt. Instead, the district court directed the Clerk to enter default judgment against Appellants and instructed that the case proceed to trial on damages alone.

H.

The District Court Enters Final Judgment and Awards Damages

At a pretrial conference on April 25, 2022, the district court considered Appellee's oral motion to convert the jury trial to a bench trial. Appellee then filed supplemental briefing regarding the right to a jury trial post-default judgment, which the district court

construed as a formal motion for a bench trial. Appellee's briefing also argued that damages could be determined by the district court without the need for a trial because they consisted strictly of statutory penalties and Appellants were barred from presenting evidence by virtue of default.

On April 26, 2022, the district court granted Appellee's request for a bench trial, noting that "had [Appellee] filed an affidavit showing the number of calls with the clerk, judgment could have been entered without need for a hearing." J.A. 2513 (citing Fed. R. Civ. P. 55(b)(1)). On April 28, 2022, Appellee moved for judgment on the record, submitting her statutory penalty calculations -- $287,531.22 in TCPA penalties and $425,475.58 in WVCCPA penalties -- and supporting evidence verified by affidavit. Appellants opposed the motion, arguing that Appellee failed to carry her burden of establishing that she is entitled to the statutory penalties she claimed in her motion. Appellants did not file a counter-affidavit questioning the information provided in Appellee's affidavit or exhibits, but rather submitted legal arguments as to why certain or all the claimed damages should not be imposed. Specifically, Appellants argued that (1) "on default, a party cannot obtain more than what was pled in the operative complaint, thereby limiting the amount of damages;" (2) "no private cause of action exists for violations of 47 C.F.R. § 64.1200(d);" (3) Appellee "must prove each call was separately annoying, deceptive, or abusive under each of the various WVCCPA sections she has pled;" (4) "numerous calls made after the complaint was filed were not made by any of the [Appellants] and cannot be the subject of damages for default;" (5) "penalties under W.Va.

Code §§ 46A-6F-50 and 46A-6F-701 are per action, not per violation;" and (6) Appellee

"is not entitled to the $3000 penalty." J.A. 2637.

On July 5, 2022, the district court entered judgment against Appellants and awarded

Appellee damages in the amount of $828,801.36, plus costs. The district court computed

the statutory penalties under the TCPA and WVCCPA based on the allegations in the

Second Amended Complaint, Appellee's affidavit, and the evidence Appellee submitted in

support of her claims. The district court awarded one penalty per call for 104 calls that

violated the WVCCPA and applied "the rate of inflation from July 1, 1998 to the date of

the award," to reach a maximum statutory penalty of $5,373.09 per call. J.A. 2649; *see*

*also* W.Va. Code § 46A-6F-701(e) ("In any action brought under this article where

damages are awarded to a consumer, the court may adjust the damages to account for

inflation from [July 1, 1998], to the time of the award of damages . . . ."). The district court

also applied the statutory penalty of $500 for 180 violations of the TCPA, resulting in a

total TCPA penalty of $90,000 that, "having found that the [Appellants'] actions were

willful and knowing," the court trebled to $270,000. J.A. 2649. The district court declined

to award the requested interest on the TCPA award.

On August 2, 2022, Music City, Huffman, and Thompson moved the district court

to alter or amend its January 4, 2022 and April 4, 2022 orders and July 5, 2022 judgment

pursuant to Federal Rule of Civil Procedure 59(e).  On September 9, 2022, the district court denied that motion, and Appellants filed a timely notice of appeal.[9]

## II.

We review the imposition of discovery sanctions, including the imposition of a default judgment, for abuse of discretion.  *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011).  "We review the conclusions of law regarding the availability and calculation of damages de novo, but the factual findings relating to the calculation of damages for clear error."  *Walsh v. Vinoskey*, 19 F.4th 672, 676–77 (4th Cir. 2021).

## III.

## A.

In reviewing a district court's findings and discovery rulings, we are "mindful of the broad discretion accorded to district courts to supervise discovery, including the imposition of sanctions for discovery abuses, as part of their case-management authority."  *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005)).  The Supreme Court has instructed courts of appeals to beware of the "natural tendency on the part of reviewing courts . . . to be heavily influenced by the severity of" a district court's "sanction for failure to comply with a discovery order."  *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S.

---

[9] On August 3, 2022, Phillips and Capital filed a timely Notice of Appeal.  On August 16, 2022, Music City, Huffman, and Thompson filed a Notice of Appeal to "join in the notice of appeal filed by . . . Phillips and Capital . . . from the Order Granting Judgment . . . entered . . . on July 5, 2022."  J.A. 3054.

639, 642 (1976).  A district court has "wide latitude in controlling discovery, and . . . its rulings will not be overturned absent a showing of clear abuse of discretion."  *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986).

A district "court abuses its discretion when its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *In re Jemsek Clinic*, 850 F.3d 150, 156 (4th Cir. 2017) (internal quotation marks omitted).  "The district court's finding that [a party] deliberately disregarded [a] pre-trial order is a factual finding of fault . . . that can be overturned by this court only if clearly erroneous." *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985); *see also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous."). If a party fails to obey an order to provide or permit discovery, fails to appear for a deposition, or fails to serve a response after being served with interrogatories or a request for production, the district court may order sanctions, including "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(vi), (d)(1)(A), (d)(3).

"When the sanction involved is judgment by default, the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).  To balance those competing interests, district courts must consider the following *Wilson* factors in determining whether to sanction a party with default judgment: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance;

and (4) the effectiveness of less drastic sanctions." *Id.*  Additionally, a party is "entitled to be made aware of th[e] drastic consequence[s] of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid" the sanction. *Choice Hotels Int'l v. Goodwin & Boone*, 11 F.3d 469, 471 (4th Cir. 1993).

While we have previously "emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction," an explicit warning is not always necessary.  *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *see also Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 956 (4th Cir. 1987) (Wilkinson, J., dissenting) (Because a party is already put on notice of the possibility of default by the terms of Federal Rule of Civil Procedure 37, "[t]o reverse the district court for failing to remind the defendant about the possibility of default would be worse than redundant; it would give the defendants yet another opportunity for delay").  There are circumstances, like the one we confront today, where the entry of default judgment against a defendant for systemic discovery violations is the natural next step in the litigation, even without an explicit prior warning from the district court.

Indeed, we have affirmed grants of default judgment where a party engaged in "repeated misconduct never wholly remedied." *Richards*, 872 F.2d at 94.  For example, in *Anderson v. Foundation for Advancement, Education & Employment of American Indians*, 155 F.3d 500 (4th Cir. 1998), we affirmed the district court's entry of default judgment against a defendant that repeatedly failed to comply with discovery orders requiring the party to produce requested documents.  *Id.* at 503–05.  And in *Hathcock v. Navistar*

*International Transportation Corp.*, 53 F.3d 36 (4th Cir. 1995), although vacating the district court's judgment on other grounds, this court recognized that the imposition of "a default sanction can, under certain circumstances, be an appropriate response to the violation of a Rule 16 [scheduling] order." *Id.* at 40 ("After all, the express terms of Rule 37 permit a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery.").

Similarly, though unpublished opinions are not binding precedent in this circuit, we find our decision in *Young Again Products, Inc. v. Acord*, 459 F. App'x. 294 (4th Cir. 2011) persuasive. There, we upheld the imposition of default judgment against a defendant who repeatedly "made little, if any, effort to comply with the district court's injunctions," despite the district court's repeated admonishments. *Id.* at 302. We affirmed the default sanction despite the district court's failure to explicitly warn the defendant that it would enter default judgment because the defendant had "constructive notice" of the possibility of default given that the opposing party "repeatedly sought sanctions," the district court expressed "displeasure about poor compliance with the injunctions," and the district court issued "a memorandum telling [the defendant] that it was going to rule on [the opposing party's] motions for default judgment." *Id.* at 304.

We have also upheld a district court's imposition of litigation-ending sanctions where counsel acted in "full awareness of and utter disregard for the district court's discovery timetable." *Rabb*, 769 F.2d at 1000 (affirming district court's order granting the defendants' motions for preclusion of the plaintiff's evidence and summary judgment after

determining that the plaintiff had unjustifiably disregarded the pre-trial discovery deadline).

B.

Appellants challenge the district court's analysis of the four-factor test set forth in *Wilson*, contending that the sanctions were too harsh because they purportedly came as a surprise, there was no specific discovery order violated, there was no prejudice to Appellee, and the court "imposed no sanction upon any defendant as a prior deterrent before entering default in the January 4 Order."  Appellants' Opening Br. at 31.  The record, however, contradicts each of these contentions, and we conclude that Appellants had fair "indication that sanctions might be imposed against [them]" for their continued discovery and scheduling order violations.  *Hathcock*, 53 F.3d at 42.

1.

Bad-Faith

The first *Wilson* factor directs the court to consider "whether the noncomplying party acted in bad faith."  *Richards*, 872 F.2d at 92.  In discovery, Appellee sought to explore Appellants' interrelationships in an attempt to prove her alter ego and joint venture claims, as well as her contention that piercing the corporate veil was appropriate. Accordingly, Appellee served two sets of discovery upon Appellants requesting, among other items, "all documents associated with the incorporation or creation of any other entity in which you and one or more of the co-defendants named herein both have (or have had) interest or ownership," J.A. 1047, and "all annual tax returns associated with any entity in which you share (or have shared) interest with one or more of the defendants named

27

herein," *id.* at 1048. Appellee also sought all documents reflecting Appellants' interests in any entities named in the suit or in which another defendant also shared an interest and requested that Appellants identify other lawsuits or investigations in which they or their related entities had been involved. Appellee eventually discovered that Appellants did not answer forthrightly but instead concealed many lawsuits, investigations, and other discoverable material including financial and corporate records.

Ultimately, these discovery disputes were referred to the magistrate judge, and the parties fully briefed and argued three motions to compel throughout this case. Yet, despite the magistrate judge granting Appellee's first motion to compel, Appellants continued to employ the same evasive discovery tactics. The continued use of these tactics resulted in the magistrate judge not only granting, in substantial part, Appellee's second and third motions to compel, but also warning Appellants that the court was "troubled by the evidence regarding the pattern and practice of [Appellants'] behavior," and ordering each Appellant to not only revisit, supplement and/or correct their production of documents, but also to submit an affidavit describing the efforts made. J.A. 1921.

Nevertheless, while Appellee's second and third motions to compel were pending, Appellants moved for summary judgment, arguing that Appellee "ha[d] no evidence tying any of the [Appellants] named in [their] motion" to her claims. J.A. 1329. In response, Appellee filed briefing pursuant to Federal Rule of Civil Procedure 56(d), highlighting to the district court that Appellants were obstructing discovery. It was not until the district court was apprised of the impact Appellants' repeated withholdings had on Appellee's case preparation that it vacated its scheduling order, withdrew its referral to the magistrate judge

on the issue of sanctions, and directed Appellee to file the items she had described in her briefing in the form of supplemental information to the pending discovery motions.

Appellee filed the supplemental authorities as directed, pointing to several undisclosed prior lawsuits and indicating that Appellants had not disclosed their implication in a West Virginia Attorney General investigation, even though the West Virginia Attorney General had directed subpoenas and discovery directly to Music City. Notably, Appellants left these supplemental authorities unrebutted.

Appellants' relentless sandbagging and failure to disclose discoverable materials, including the existence of business entities founded during the course of this case, demonstrate a continued pattern of discovery abuse that we simply cannot chalk up to inadvertence or mistake.  Therefore, we agree with the district court that "a finding of bad faith on the part of the defendants is easily met" in this case.  J.A. 2498.

2.

Prejudice

The second *Wilson* factor requires the court to consider "the amount of prejudice [the noncomplying party] caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce."  *Richards*, 872 F.2d at 92.  As the district court explained, "much of the evidence that has been concealed has been directly related to . . . [Appellee's] theory of . . . alter ego and joint venture claims."  J.A. 2499. The evidence Appellee unearthed while conducting her own research -- particularly Appellants' connections with ACRO and TCLO -- supported her allegations of joint enterprise and alter ego.  Appellants' failure to disclose this information not only deprived

Appellee of discoverable information necessary to prove her claim, but it also caused delays in the litigation and considerable expense to Appellee because her counsel had to spend time researching and uncovering information Appellants should have properly disclosed but chose to withhold.

3.

Deterrence

The third *Wilson* factor asks the court to evaluate "the need for deterrence of the particular sort of noncompliance." *Richards*, 872 F.2d at 92.  Here, the parties fully briefed and argued three motions to compel well before the district court's imposition of sanctions. In fact, despite a request for sanctions accompanying each of Appellee's motions to compel, the district court only entertained the notion of sanctions -- particularly, the entry of default judgment -- after Appellants continued to flout the court's orders.  For example, pursuant to the magistrate judge's orders compelling discovery, Appellants were not only required to submit affidavits describing the efforts made to meet discovery requirements, but they were also under a continuing obligation to identify and produce documents regarding affiliated entities.  Appellants facially complied with these orders, filing their verified supplemental discovery and representing anew that as of December 8, 2021, they had disclosed all business relationships and co-ownerships.  Huffman and Thompson, individually and on behalf of Music City, both expressly swore that they believed "all responsive documents are now being produced."  J.A. 3062.  Yet, Appellee discovered through her independent research that Appellants had failed to disclose more than 15 business entities, several of which "were formed *while* this case was ongoing," along with

30

additional evidence connecting them to others.  *Id.* at 2499.  This information prompted Appellee to renew her motion and seek the additional sanction of judgment by default.

Each Appellant had a full opportunity to respond to Appellee's renewed motion, and the district court considered all of the briefings before imposing the sanctions.  Thus, the imposition of default judgment could not have come as a surprise to Appellants. Indeed, the district court resorted to the entry of default judgment only after it considered the parties' submissions and made findings of bad faith and a pattern of discovery abuses. Appellants had many warnings that sanctions for their continued discovery abuses were on the horizon, including the fact that their responsive briefing to Appellee's motions to compel disputed whether sanctions were warranted; their counsel heard in open court on November 10, 2021, that Appellee sought (and the district court was contemplating) striking their defenses as an initial sanction; a corresponding Order of Hearing was docketed withdrawing the issue of sanctions from the magistrate judge; Appellants filed responsive briefing to Appellee's Federal Rule 56(d) motion in which Appellee asked for Appellants' defenses to be stricken as a sanction; Appellants were served with Appellee's supplemental authorities in which Appellee sought sanctions; and Appellants filed a responsive briefing to Appellee's motion for entry of default judgment on the record.

We agree with the district court that Appellants were adequately put on notice as to the consequences of their actions and that their continued obstinacy warranted a sanction of entry of default judgment.  The record overwhelmingly demonstrates that Appellant was given ample "opportunity to satisfy the conditions [of the court's discovery orders] and avoid" this sanction. *Choice Hotels Int'l*, 11 F.3d at 471.  Based on the procedural posture

of this case and Federal Rule 37, which provides that "if a party . . . fails to obey an order

to provide or permit discovery . . . the court . . . may . . . render[] a default judgment against

the disobedient party," it is implausible that Appellants lacked notice that default judgment

was likely if they continued to abuse the discovery process.  Fed. R. Civ. P. 37(b)(2)(A)(vi).

"To find otherwise would be to send the . . . message that the court may be pushed, ignored

and defied to the outermost limits so long as the noncomplying party has even an

inadequate failback act ready in the wings should the final curtain be falling."  *Richards*,

872 F.2d at 94.

4.

The Effectiveness of Less Drastic Sanctions

The final *Wilson* factor directs the court to consider "the effectiveness of less drastic

sanctions" before imposing the sanction of default judgment.  *Richards*, 872 F.2d at 92.

Below, the district court found that Appellants' pattern of conduct in this case and similar

cases justified the imposition of default judgment.

While the district court first struck Appellants' defenses as an initial sanction for

their discovery abuses, we briefly highlight the apparent equivalence between the district

court's January 4, 2022 order striking defenses and its subsequent entry of default

judgment.  While we would expect that striking Appellants' defenses would require

Appellee still affirmatively prove her case, the district court determined that the "only issue

remaining in this case [was] a trial on [Appellee's] damages."  J.A. 1946.  Likewise, when

the district court later imposed default judgment against Appellants in its April 4, 2022

order, it once again concluded that a jury trial was necessary "to determine the number of

32

statutory violations in order to calculate damages." J.A. 2500.[10] Thus, the later imposition of default judgment does not appear meaningfully different from the initial sanction striking defenses in this case.

Nevertheless, we conclude that the district court did not abuse its discretion by imposing sanctions for systemic discovery abuse by first striking Appellants' defenses and then, after persistent discovery violations, entering default judgment.[11] Even if we read the district court's first sanction order as imposing default judgment rather than striking defenses, given the flagrant discovery violations at the center of this case, we would still affirm the district court.

---

[10] At a pre-trial conference on April 25, 2022, Appellee raised the issue of whether a jury trial was needed in this case given the district court's entry of default judgment against Appellants. Following the hearing, Appellee filed supplemental authorities, which the district court construed as a formal motion for a bench trial. The district court granted Appellee's motion and once again noted, "The only issue remaining in this case is to determine damages, which hinges on a finding of the number of calls made by [Appellants] which violated the TCPA and WVCCPA." J.A. 2513. The district court further stated, "Indeed, had the [Appellee] filed an affidavit showing the number of calls with the clerk, judgment could have been entered without the need for a hearing." *Id.*

On April 28, 2022, Appellee filed a Motion for Entry of Default Judgment on the Record, submitting her affidavit stating the number of calls made by Appellants that violated the TCPA and WVCCPA and re-submitting relevant documentation in support of the penalties requested. After considering Appellee's motion and Appellants' objections, the district court granted Appellee's motion and ordered the clerk to enter judgment against Appellants in the amount of $828,801.36, plus costs.

[11] The district court also considered Appellants' Federal Rule 59(e) motion and fully explained its reasoning for entering default judgment and damages before denying that motion.

C.

Appellants insist that, despite the entry of sanctions, the district court "erred in refusing to grant" their motion for summary judgment because Appellee "produced no evidence that [Appellants] made the telephone calls at issue." Appellants' Opening Br. at 10. But Appellants misunderstand the sanctions imposed upon them.

Federal Rule 56(d) "mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to [her] opposition.'" *Pisano v. Strach,* 743 F.3d 927, 931 (4th Cir. 2014) (quoting *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). "[A] court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Id.*

Here, because the district court struck Appellants' pleadings and Appellee's Second Amended Complaint successfully made out a claim for violations of the TCPA and WVCCPA, the only issue that remained was to determine damages. Thus, the district court did not abuse its discretion by dismissing Appellants' motion for summary judgment as moot.

Significantly, although the district court denied Appellants' motion for summary judgment as moot, it noted that even if it "had not stricken [Appellants'] defenses," it would have still denied "the motion for summary judgment and grant[ed] [Appellee's Rule 56(d)] motion for deferral." J.A. 1947. The fact that Appellee did not have the evidence necessary to prove the merits of her claims was *because of* Appellants continued discovery abuses. Thus, because the requested discovery was essential to Appellee's opposition to summary

judgment for the reasons discussed in detail above, the district court would have properly denied Appellants' motion for summary judgment and granted Appellee's Federal Rule 56(d) motion.

### D.

Appellants further argue that any damages award must be limited to the 25 phone calls Appellee explicitly pled in her Second Amended Complaint.   This argument misrepresents the pleadings in this case.

The legal effect of a default judgment is that the defendant is deemed to have admitted "the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)).   However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* (quoting *Nishimatsu*, 515 F.2d 1200 at 1206).   The court must "determine whether the well-pleaded allegations in [the operative] complaint support the relief sought." *Id.*   Additionally, a judgment by default may extend only to what is prayed for in the complaint's demand for judgment.   Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

Here, in addition to the 25 phone calls expressly pled in the Second Amended Complaint, Appellee alleged that "[Appellants] continued to call [Appellee] on other occasions throughout 2018 and during January 2019"; "[Appellants] placed other calls to

[Appellee] during this time frame which were autodialed and/or prerecorded"; and "On February 6, 2020, over a year after the initial Complaint herein was filed, and while this case was being actively litigated, [Appellants] and/or their agents placed additional calls to [Appellee] similar in nature to those described above."  J.A. 417.

As the district court noted, these claims "concerning the additional calls in question [were] effectively deemed admitted by virtue of default judgment."  J.A. 2638; *see also Ryan*, 253 F.3d at 780 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206)).  The Second Amended Complaint, filed on April 10, 2020, put Appellants on notice that Appellee's claim included additional calls received during active litigation.  Still, Appellee continued to receive calls post-filing and continuing throughout 2021, which were disclosed and litigated as part of this case.  Appellants' counsel even questioned Appellee about the "77" additional calls she received post-filing during her August 13, 2021 deposition and recited Appellee's testimony concerning those calls in Appellants' Motion for Summary Judgment. J.A. 1351.  Thus, despite having argued the sufficiency of Appellee's evidence concerning all of these calls, Appellants argue that Appellee should not receive due damages for each violative call she received because she failed to predictively plead exactly how many times Appellants would violate the statutes after being served the Second Amended Complaint.

Appellee has presented evidence establishing that a majority of the calls made after the complaint was filed were placed on behalf of and for the benefit of TCLO and/or ACRO.  Thus, Appellants argue that liability depends "almost entirely on whether they are

the alter egos of [TCLO]/ACRO."  Appellants' Opening Br. at 32.  However, by virtue of the entry of default judgment, each Appellant is indisputably considered to be an alter ego of each of these entities because such allegations in the Second Amended Complaint have been deemed admitted.

Moreover, Appellee produced in discovery, among other things: (1) actual recordings of the calls, together with transcripts when available; (2) a verified timeline summarizing the date, time, originating and receiving numbers, and content of the calls; (3) documents emailed to her in connection with the calls; and (4) materials gleaned from numerous other state investigations and lawsuits reflecting that Appellants have a history of operating in concert in scams such as these.  This evidence demonstrates that TCLO is one in the same as ACRO, with TCLO merely having "changed its name with the Tennessee Secretary of State's Office to [ACRO]."  J.A. 2585.  And Appellee's verified timeline alone reflects that many of the calls explicitly identified TCLO, as well as name variations thereof, and ACRO.

Courts are afforded significant discretion when determining the need for a hearing on damages.  *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly.").  Therefore, because the damages consisted strictly of statutory penalties, the amount of the which was readily discernable on the basis of undisputed evidence in the record, the district court did not abuse its discretion by entering judgment in favor of Appellee and awarding statutory damages without a trial.

E.

Finally, Appellants challenge the district court's award of damages for the same purported calls pursuant to both the TCPA and WVCCPA.  Although "courts can and should preclude double recovery by an individual," *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980), the statutory penalties at issue in this case penalize different conduct. *Cf. Charvat v. NMP, LLC*, 656 F.3d 440, 447–52 (6th Cir. 2011) (allowing for recovery under both the TCPA and Ohio Consumer Sales Practices Act even where both violations arose from the same call).  Nothing in either the WVCCPA or the TCPA forces a plaintiff to choose between federal and state remedies.  *See* 46 W. Va. Code § 46A-6F-702 ("Nothing contained in this article shall be construed . . . to limit any civil . . . remedy otherwise provided for by law."); *see also* 47 U.S.C. § 227(f)(1) ("[N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations.").  Thus, because penalties under the TCPA and WVCCPA are not exclusive and the statutes separately penalize different violative conduct, damages under the WVCCPA may be awarded in addition to those under the TCPA for a single communication that violates both statutes.

Moreover, because the plain language of the TCPA "allows a person to recover '$500 in damages for each . . .violation of this subsection,'" a plaintiff can recover separate penalties under separate sections of the TCPA even if the violations occurred in the same telephone call.  *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015); *see also Charvat*, 656 F.3d at 449.  Therefore, the district court did not err by

awarding one penalty per call under the WVCCPA and under separate sections of the TCPA.[12]

IV.

For the foregoing reasons, the district court's order entering default judgment against Appellants and awarding Appellee $828,801.36, plus costs, is

*AFFIRMED.*

---

[12] Appellants also cite to West Virginia Code Section 55-7-13a, which enacted modified comparative fault, for the proposition that they cannot be held jointly liable for damages in this case, and that a jury must consider the "empty chairs" in this matter. Appellants' Opening Br. at 35. But defendants in West Virginia may still be held jointly and severally liable where vicarious liability applies. *See* W. Va. Code § 55-7-13d(b).